ALEXANDER, (JAMIESON v.)

[See Jamieson v. Alexander, Case No. 7,203.]

---

ALEXANDER, (JOICE v.)

[See Joice v. Alexander, Case No. 7,435.]

---

## Case No. 170.

### ALEXANDER v. KNOX.

[6 Sawy. 54.][1]

Circuit Court, D. Oregon. Sept. 3, 1879.

County—School Funds—Plaintiff — Judgment —Judgment Roll—Claim—Donation—Wife's Share.

1. A county in Oregon is a body politic, and may, in the exercise of the powers given it by statute, take a note or bond and mortgage, and enforce the same by the ordinary legal proceedings in the courts.

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

2. In 1858, the only fund which a county treasurer was authorized by law to loan was the common school fund in his custody arising from the sale of sections 16 and 36, and in doing this he was the agent of the territory,—the trustee of the fund.—and not the county, and a suit to enforce the obligation of such note and mortgage should have been brought in the name of such treasurer.

3. A suit brought in the name of a plaintiff, who is neither a natural nor an artificial person, is a nullity; and therefore a suit by the "board of county commissioners of Lane county," in 1863. to enforce a note and mortgage given to the treasurer of that county upon a loan of school funds, was a nullity, and could not support a decree for any relief.

4. The judgment of a court of general jurisdiction is presumed to have been rightly given, upon sufficient pleadings and process, until the contrary appears; and therefore, where it appears that a decree might have been given, either in a suit which was a nullity for want of a real plaintiff, or in another which was not, this presumption is sufficient to sustain the validity of the same.

5. The certificate of the clerk is not evidence of the character or legal effect of the paper to which it is appended,—as, for instance, that it is a copy of judgment roll,—but only that it is a true copy of the original, on file in his office; and as to what it is, it must speak for itself.

6. The boundaries of a claim, under the donation act, are a part of the public surveys of the country; and a description of a tract of land as a claim, number 70, in township 20 south, of range 3 west, is sufficiently certain in a decree, or elsewhere.

7. Where a claim was taken up by a married settler, under section 5 of the donation act, after January 20, 1852. and the wife died before January 30, 1854, and before the completion of the residence and cultivation required by the act. her share of the donation was. by virtue of the act of January 20, 1852, (Sess. Laws, 64,) her separate property, and upon her death descended to her heirs unaffected by any claim of the husband on account of the marriage, as directed by the common law.

At law. This action is brought by the plaintiff, [Robert Alexander,] a citizen of California, against the defendant, a citizen of Oregon, to recover the possession of a half section of land situate in Lane county, the same being the donation claim of Robert Alexander and Sarah, his wife, numbered 70, and lying in sections 35 and 36, in township 20 south, of range 3 west, of the Wallamet meridian. The action was commenced against the tenant, George T. Sears, when, on his application, the landlord, Samuel B. Knox, was made defendant in his place. In the pleadings, each party alleges that he is the owner of the premises, and the other is not. The case was heard by the court without a jury. [Judgment for defendant.]

Addison C. Gibbs and W. Scott Bebee, for plaintiff.

Rufus Mallory and Horace Knox, for defendant.

DEADY, District Judge. From the evidence it appears that the plaintiff went on the premises on September 1, 1852, as a married settler, under section 5 of the donation act, and resided upon and cultivated the same for four years, as required by said act; and that his wife, Sarah, died thereon in 1853; that on September 27, 1867, the officers of the proper land office issued a patent certificate to said plaintiff and his wife for said premises,—the north half to the husband and the south one to the wife, —and that on June 14, 1877, a patent for the premises issued in pursuance of said certificate; that on November 17, 1858, said plaintiff made his promissory note to the treasurer of Lane county for the sum of eight hundred dollars, payable three years from date, with interest at the rate of ten per centum per annum, and to secure the payment of the same, together with his then wife Susannah, on the date last aforesaid, executed and delivered to said treasurer a mortgage of said premises; that on October 8, 1863, a suit was commenced against said plaintiff and wife in the circuit court for said county to enforce the lien of said mortgage by filing a complaint therein, in the name of the "board of county commissioners of Lane county," and on the same day a summons likewise entitled was placed in the hands of the proper officer who, on October 16, 1863, returned thereon that he had duly served the same on said plaintiff on October 9; that on October 30, 1863, for want of an answer, a decree was given in said court entitled "Lane County, Plaintiff, v. Robert Alexander, Defendant," [2] directing the sale of said mortgaged premises, and that the proceeds be applied to the payment of the costs and expenses of the suit and one thousand seventy nine dollars and fifty cents paid to the complainant, with interest from date; that on September 1, 1866, in pursuance of said decree, said premises were duly sold to one J. W. Matlock for the sum of one thousand two hundred dollars, and on October 25, 1866, said sale was duly confirmed; that on July 27, 1867, in pursuance of said sale and confirmation, said premises were by the sheriff duly conveyed to said Matlock, who, afterwards, on June 22, 1867. in consideration of the sum of one thousand and fifty dollars, conveyed to the defendant, Samuel B. Knox, all the interest of the plaintiff therein on September 1, 1866; and that afterwards, on March 20, 1867, said defendant, Knox, by means of proper conveyances, acquired all the interest in the premises of the six children and heirs ro plaintiff's deceased wife, Sarah. The plaintiff puts his right to recover upon the ground that the decree upon which the premises were sold to Matlock is void, because: 1. The county of Lane had no power or authority to loan money or to take or own a mortgage. 2. The decree was given in a suit in which "Lane county" was the plaintiff, while it appears from the records

---

[2] [Nowhere reported.]

that the only suit then pending upon said note and mortgage in said court for Lane county was one in which the "board of county commissioners of Lane county" was plaintiff. Before considering those questions, it may be well to state the right of the plaintiff in the premises at the date of this mortgage, a point upon which there was some conflict and uncertainty in the opinion of the counsel. The donation act made no provision for the descent or disposition of the wife's share of the donation in case of her death before the completion of the residence and cultivation required by the act. At the death of Sarah, 1853, she was seised of an estate of inheritance,—a conditional fee in her share of the donation, —the condition being, that her husband should complete the necessary residence and cultivation thereon. There being then no statute in force in Oregon regulating descent of real property, the subject was regulated by the rules of the common law. According to these, the property descended to her children, as her heirs, to the exclusion of her husband. Neither did the latter acquire a life estate in the premises as tenant thereof by the curtesy. For by the act of January 20, 1852, (Sess. Laws, p. 64,) it was provided that "all right and interest of the wife" in the donation "be and is hereby secured to the sole and separate use and control of the wife." The share of the wife, Sarah, in this donation, was acquired after the passage of this act, and by the necessary operation of it the husband was precluded from taking any interest in it by virtue of the marriage. And although this act was repealed on January 30, 1854, and section 30 of the act of January 16, 1854, in relation to estates, (Gen. Laws Or. p. 588,) gave the husband an estate for life in the inheritance of the wife, of which they were both seised in her right "as tenant thereof by the curtesy," whether they had "issue born alive or not," still in this case, the wife having died before such repeal and enactment, and her inheritance having in the mean time descended to her children without any interest therein on the part of the husband, their rights could not be affected thereby. Fields v. Squires, [Case No. 4,776;] Wythe v. Smith, [Id. 18,122.] It follows from these premises that the plaintiff never had any interest in the wife's donation, and is, therefore, not entitled to the possession of the same, and that the defendant, having acquired the interest of her heirs therein, is the owner of the same, independent of the sheriff's deed.

As to the remaining quarter section, the husband's share or the donation, the case will now be considered upon the plaintiff's objections to the validity of the decree. By the laws of this state each county therein "is a body politic and corporate," for the purpose, among other things, of purchasing and owning property, real and personal, for the use thereof, and of making "all necessary contracts," and doing "all other necessary acts in relation to the property and concerns of the county." (Gen. Laws Or. p. 535;) and the county court, as the representative of the county, has the power to provide, among other things, for the erection and furnishing of all necessary public buildings, bridges, the maintenance and employment of the poor, the management of the county property, funds, and business, and to compromise for any debt or damages due the county, (Civil Code Or. § 870.) The county sues, and is sued, in its name under the direction of the county court, (Id. § 871,) and may maintain an action upon a cause of action accruing to it upon a contract made with it, (Id. § 346.) From this summary of the powers of a county, it is apparent that it must have the authority in many instances to take notes and mortgages, and enforce them by the usual and proper legal proceedings. To show this, it is only necessary to suggest a few cases. For instance, the county may let a contract to construct a building or bridge, and may therefore take a note or bond and mortgage as security for the due performance thereof; it may compound a debt due the county by the sureties of a defaulting officer, and may, of course, take a note and mortgage for the sum accepted in lieu of the whole debt; it may also accumulate a fund by a limited tax, during a period of years, wherewith to construct an expensive bridge or building, and may in the mean time loan the fund as it is collected upon the note and mortgage. These acts are necessarily incidental to the powers expressly granted to the county. Indeed, the last instance is probably included in the express power to manage and care for "the county property, funds, and business."

From the complaint in the case of Board of Com'rs of Lane Co. v. Alexander, it appears that the note and mortgage sued on were given to the county treasurer. By section 20 of the act of August 14, 1848, (9 Stat. 323,) it was provided that sections 16 and 36 of the public lands of the territory should be "reserved for the purpose of being applied to schools" therein. By the act of January 7, 1856, (Sess. Laws, p. 69,) it was provided that the school lands in the various counties should be disposed of by the county superintendents of schools, and the proceeds deposited with the territorial treasurer; and by the act of January 30, 1858, (Id. 43,) that said proceeds should be paid into the county treasury, and it was also thereby made the duty of the respective county treasurers to loan the same under certain regulations therein prescribed, upon note and mortgage, for a period not exceeding three years.

The only money which a county treasurer was authorized by law to loan at the date of this note and mortgage was this school fund, and the reasonable inference is that

such was the character of the money loaned to Alexander. These funds belonged to the territory in trust for the benefit of the common schools of the country, and in fact that the legislature employed the county superintendents to dispose of the lands, and the county treasurers to keep and loan the funds arising therefrom, did not make them the property of the county, or authorize it to bring suit upon a note and mortgage made to the county treasurer therefor. In the absence of any statute to the contrary, the suit upon this Alexander note and mortgage should have been brought in the name of the county treasurer. But the validity of this note and mortgage, and the right of Lane county to sue upon it, was necessarily involved in the decree of the circuit court, and is therefore conclusively determined by it, whenever the question arises collaterally. Semple v. Bank of British Columbia, [Case No. 12,659;] Cromwell v. County of Sac, 94 U. S. 352. In the former case the court said: "The court, even if there had been no defense interposed, must, in giving its decree, have determined that the bank had capacity to sue, and that the note and mortgage were valid. This much at least was necessarily included in the decree, and, without determining these two questions in this way, the court could not have pronounced it." During the territorial government, the county was represented and its business transacted by a board, called "the board of county commissioners;" but by the constitution of the state government this tribunal was superseded by the county court. At the date, then, of the commencement of the suit against Alexander in the Lane county circuit court, there was no such person, either natural or artificial, as the "board of county commissioners of Lane county," and therefore the suit commenced in its name was without a plaintiff, and a mere nullity. Proprietors of Mexican Mill v. Yellow Jacket S. M. Co., 4 Nev. 42. Of course, if the decree enforcing the lien of the mortgage, although entitled Lane County v. Alexander, was actually given in the suit, entitled Board of County Com'rs of Lane Co. v. Alexander, then it is null and void also.

The only question, then, open to consideration in the case is, whether the decree was given in such suit or not. The decree and suit, being in favor of different plaintiffs, are not presumed to be a part of the same proceeding, although the subject-matter appears to be the same. For aught that appears, the suit by the board of commissioners may have been dismissed or abandoned as a mistake, and another one brought in the name of the county in which this decree was duly given. The circuit court of Lane county is a court of general jurisdiction, and therefore the presumption is in favor of the regularity of its proceedings. In such a court all things are presumed to have been rightly done. Miller v. U. S., 11 Wall. [78 U. S.] 299. Therefore,

the presumption is that the decree in question was duly given in a sufficient proceeding; and if from the records it appears that such decree might have been given in either a suit by the Board of Com'rs of Lane Co. v. Alexander, the presumption is that it was given in the latter, rather than the former, because that would be legal, and the other not. But the plaintiff contends that it appears affirmatively from the record that this decree was given in the suit of the Board of Com'rs of Lane Co. v. Alexander. The ground of this claim is that the clerk of the circuit court of Lane county has appended to a copy of the complaint, summons, and return thereon in said case and the decree in Lane County v. Alexander an official certificate of the date of April 14, 1879, to the effect that he has carefully compared said copies "with the original judgment roll in the suit of Lane County v. Robert Alexander," then on file in this office, and that they are correct copies of the whole thereof; and, further, that, according to the records and files of his office, no other paper than these "was ever filed or made in said suit." In this certificate the clerk does impliedly assert that there is in his office a judgment roll constituted by the papers of which these are copies, and the argument from this fact is, that it is conclusive evidence that the decree entitled Lane County v. Alexander was really given in the suit of Board of Com'rs of Lane Co. v. Alexander, and is therefore void, such suit being a nullity for want of a plaintiff. But can the clerk certify that there is or is not a judgment roll on file in his office, or that any given number or kind of papers therein constitute such a roll? It is clear in my judgment that he cannot. The only fact of which his certificate is evidence, is that the paper to which it is appended is a true copy of the original then on the files or records of his office. Being the custodian of the original, he is authorized to make a copy thereof, and his certificate is proof of that fact. Civil Code Or. §§ 568, 720, 738. But with this his power ends; and whether the paper is a judgment roll or not, must be determined by itself. If a clerk certifies, that a paper is a true copy of an entry in the records of his office, and that the same is a judgment in a particular action, the latter part of such certificate is extra-official, and of no effect. For whether such an entry is in law a judgment in the particular action mentioned, or at all, is a question of law to be determined by the court when and where it may arise, and not the clerk.

What constitutes a judgment roll, and when and by whom it shall be made, is set forth with particularity in section 269, Civil Code Or. It provides that the "clerk shall prepare and file in his office the judgment roll" before the next term of the court after docketing the same. The power of the clerk to make this roll does not extend beyond the next term, unless perhaps upon an order of the court allowing the same to be done thereaft-

er. When the complaint is not answered the roll is made by attaching together the complaint, summons, proof of service, and a copy of the entry of judgment. But such papers do not constitute a judgment roll, unless they have been identified and attached together by the clerk as the complaint, summons, and judgment in a particular case. But this is not all. These papers, when so collated, must be marked as the judgment roll, by being inclosed in a blank sheet of paper, with "the name of the court, the term at which judgment was given, the names of the parties to the action, and the title thereof, for whom judgment was given, and the amount or nature thereof, and the date of its entry and docketing," indorsed thereon; and then the roll, being prepared, must be filed by the clerk as such. But the judgment existed before the judgment roll, and is valid without it. Tried by this statute there is no judgment roll, so far as appears, in either Board of Com'rs or Lane Co. v. Alexander. There are copies of some papers here from both cases, but there is no judgment roll in either of them. Neither is there any sufficient evidence that there never were any other papers on file in either case. The certificate of the clerk is not, and could not be, absolute on that point, but is only according to the present records and files of this office. Further than this the clerk could not certify. But the present absence of a complaint, summons, and proof of service in the suit of Lane County v. Alexander from the files of Lane county court is not sufficient evidence that they were never there, in the face of the presumption to the contrary, arising from the fact that there is a final decree in that suit of record. The presumption being that this decree was rightly given, until the contrary appears, it follows that it must have been given upon proper pleadings and process. And the mere fact that the clerk of the court, after the lapse of sixteen years, is unable to find such pleadings or process on file in his office, or any evidence, from the records and file thereof, that they ever were there, is not sufficient to neutralize or overcome such presumption.

Objection was also made to this decree for want of certainty in the description of the premises directed to be sold and the amount to be paid the plaintiff therein. The description of the premises is as follows: "Claim No. 70 in T. 20 S., R. 3 W., of the Wallamet meridian." The survey of a donation claim is a part of the public surveys of the country, and therefore a description of a tract of land, as claim No. 70 in a certain township and range, is just as certain as a description by reference to a certain section in said township and range. The word "claim" in the surveys under the donation act is used to designate a tract of land claimed by a settler under such act—a donation claim. The premises are so described in the patent certificate and patent; and it is equally as certain as one

by the section or subdivison thereof. The decree directs that the premises be sold, and that out of the proceeds the plaintiff therein be paid one thousand and seventy-nine dollars and fifty cents, with interest from date. There is no uncertainty in the decree in this particular. There must be a finding for the defendant, that he is the owner of the premises.