# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA,

## JANUARY TERM, 1864.

---

Robert Whitaker, Plaintiff in Error, vs. Edmund Rice and George L. Becker, Defendants in Error.

ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

A payment by one joint obligor of the interest due on a bond, before the statute of limitations has run against the bond, will take the same out of the statute for six years from the date of the last payment, as against his co-obligors, notwithstanding the party paying is named in the body of the bond as principal, and the other obligors as sureties, and the payments were made by him without the knowledge or consent of the sureties. This decision is based upon *sections 6 and 24 of chapter 60 of the Compiled Statutes*, concerning the "time of commencing actions."

Points and authorities of Plaintiff in Error.

*First.*—The payments of interest on the bond by Hollinshead take the case out of the statute of limitations, and the last payment having been made September 26, 1857, within six years of the commencement of the action, must operate to defeat the Defendants' plea.

vol. ix.—3

It is the settled law in England that part payment, either of principal or interest, by one of several joint debtors, upon an existing contract, takes the case out of the statute as to all.

See the leading case of *Whitcomb vs. Whitney*, 2 *Doug.*, 652; *Perham vs. Raynal*, 2 *Brigham*, 206; *Burleigh vs. Stott*, 8 *B. & Cr.*, 36; *Pease vs. Hirst*, 10 *B. & Cr.*, 122; *Wyatt vs. Hodson*, 8 *Bing.*, 309; *Mandaston vs. Robertson*, 4 *M. & Ryl.*, 440; *Channel vs. Ditchbourne*, 5 *M. & W*, 494.

The same doctrine was also adhered to in Massachusetts until changed by express statute. 2 *Pick.*, 581; 3 *Id.*, 291; 4 *Id.*, 382; 14 *Id.*, 387. Also in Maine—7 *Greenl'f*, 26; 3 *Fairf.*, 11; 15 *Maine*, 390; 21 *Id.*, 433; 22 *Id.*, 497. Also in Vermont—13 *Verm.*, 353; 18 *Id.*, 440. Also in Connecticut—4 *Conn.*, 336; 8 *Id.*, 268; 9 *Id.*, 496; 17 *Id.*, 511.

And it is immaterial that the Defendants were sureties only. Payment by Hollinshead takes the case out of the statute equally as though the Defendants were principals in the bond. 8 *B. & C.*, 36; 8 *Bing.*, 309; 14 *Pick.*, 387, before cited.

Nor is it material that the action is brought only against those who did not make the payment. See the cases of *Whitcomb vs. Whitney*, *Burleigh vs. Stott, and Channel vs. Ditchbourne*, before cited.

It is admitted that the authority conflicting in principle with the foregoing is inconsiderable. Indeed it is believed that the only respectable authority directly conflicting is that of *Shoemaker vs. Benedict*, 1 *Kernan*, (*N. Y.*,) 176; and in that case it is worthy of remark that much the ablest opinion is the dissenting one—the court having been divided in opinion on this point. Wherever the contrary doctrine has been held it will be found most generally to have been based upon a local statute (like those of Maine and Massachusetts, passed after the date of the decisions of those States above cited,) to the effect " that one of two or more joint contractors shall not lose the benefit of the statute of limitations by reason of part payment made by any of the other contractors."

*Second.*—The language of *our* statute is peculiar. The new

doctrine adopted by the legislatures of so many States is entirely ignored, and the original doctrine respecting the effect of part payment plainly and unequivocally enunciated.  *Comp. St.*, 534, *sec.* 24.

Points and authorities of Defendants in Error.

1. It is well settled that nothing but a new promise to pay the debt, made by the party sought to be charged, will take a case out of the statute, or will prevent the statute from running against the cause of action.  See *Smith's Leading Cases, vol.* 1, *pp.* 614, 615, 617; 4 *Greenl'f R.*, 41; 3 *Id.*, 97; 7 *Blackford R.*, 537; 2 *Comstock*, 523; 1 *Kernan*, 183; 14 *Pick.*, 387; 2 *Id.*, 581; 3 *Kent Com.*, 50; 2 *Blackf'd*, 371; 15 *Wend.*, 284; 15 *Id.*, 308; 8 *John.*, 407; 11 *Id.*, 146; 15 *Id.*, 511; 3 *Wend.*, 187; 3 *Id.*, 532; 11 *Wheaton*, 309; 8 *Cranch*, 72; (3 *Cond. R.*, 121;) 1 *Peters*, 351; (7 *Curtis Dec.*, 612;) 5 *Shepley*, 184; 5 *Id.*, 145; 2 *Pick.*, 368; 21 *Id.*, 323; 22 *Id.*, 291; *Angel on Limitations, secs.* 208, 231; 4 *Mo.*, 100; *Rev. Stats., p.* 332, *sec.* 23; *Doug.*, 652; (*cited* 1 *Smith's L. C.*, 606;) 4 *Conn.*, 338.

2. Part payment of principle or interest after the debt becomes due, is only evidence from which a new promise to pay the residue may be implied.  7 *Blackf'd*, 539; 21 *Pick.*, 323; *Ang. on Lim., sec.* 240; 1 *Kernan*, 185; 4 *Smith*, 560; *Doug.*, 652; (*cited* 1 *Smith's L. C.*, 606.)

3. The payment of interest on the bond in this action (and the promise implied therefrom), which is relied upon to take the case out of the statute of limitations, was made by Hollinshead, and not by the Defendants in this action, or either of them, and without their authority, knowledge or consent.  It is, therefore, not binding upon them, and does not deprive them of their defence under the statute.

The promise made [by Hollinshead (which is proved by the payment of interest by him,) is not binding upon the Defendants in this action unless he had authority from them, either express or arising by implication of law, from their relation as principal and sureties on the bond in suit.

4. It is immaterial whether the payment is made before or after the statutory limitation has run against the demand. *Dunham vs. Dodge*, 10 *Barbour*, 566, and other cases last above cited; *Angel on Lim.*, sec. 237; *R. S., p.* 332, sec. 24.

5. By our Statute, (*R. S., p.* 332, *sec.* 23,) an express promise is binding only on the person making it, and by a fair construction a payment under the 24*th section* affects the person making it only so far as the plea of the statute is concerned.

BIGELOW & DALRYMPLE, Att'ys for Plaintiff in Error.

MASTERSON & SIMONS, Att'ys for Defendants in Error.

*By the Court*—FLANDRAU, J.—On the third day of May, 1854, the Defendants, Rice and Becker, together with William Hollinshead, now deceased, executed to the Plaintiff a bond in the penal sum of four thousand dollars, conditioned to pay to the Plaintiff the sum of two thousand dollars, with interest, within one year from the date of said bond. The obligors were described in the body of said bond as follows: "We, William Hollinshead, of" &c. "as principal, and Edmund Rice and George L. Becker, of" &c. "as sureties." The bond was signed by each of the obligors in the above order, but without any further statement designating their relation to the obligee or to each other. Hollinshead, from time to time, paid the interest upon the bond, according to the tenor thereof; the last of which payments was made on the 26th of September, 1857. These payments were made by Hollinshead individually, and without the procurement, knowledge or consent of the Defendants or either of them. This action was commenced against the Defendant Rice, on the 5th of December, 1861, and against the Defendant Becker, on the 31st of the same month. No other payments were made on the bond. It will be seen that more than six years had elapsed between the due date of the bond and the commencement of the suit, but that a much less period than six years had run between the last payment of interest by Hollinshead and the commencement of the action. The statute

Whitaker v. Rice and Becker.

of limitations is the defence set up, and the point presented for decision is, whether the payments by Hollinshead of interest, before the statute of limitations had run against the note, was effectual to prevent the operation of the statute as against his co-obligors until six years from the date of the last payment.

The argument of the case by counsel was elaborate and able. The briefs furnished the court are exhaustive of the views presented, and we have endeavored to give the case the examination its importance demands. It is exceedingly difficult to arrive at any just conclusion upon the weight of authority. We have the great name of Lord Mansfield for this doctrine as to joint debtors: "Payment by one is payment for all, the one acting, virtually, as agent for the rest; and, in the same manner, an admission by one is an admission by all, and the law raises the promise to pay, when the debt is admitted to be due." And we have the Court of Appeals of New York, by Judge Bronson, asserting that nothing but the great name of Mansfield could have given currency to such reasoning. Quite as great a diversity of decision and reasoning exists between the decisions of the several States, and even in the courts of the same State. So great has this uncertainty become of late, that many of the States have endeavored to extricate themselves by statutory provisions. Some directly upon the point involved in this case, as to the effect of a payment by one of several joint debtors upon the running of the statute of limitations against the other debtors, and some upon the effect of payments generally, without particularizing as to joint debtors, as is the case with our own State.

The distinctions which have occupied the courts have generally been as to whether an acknowledgment of the old debt was sufficient to raise a new promise to pay it, or whether a promise was actually necessary, and whether the promise must be absolute, and from what acts or words a promise could be implied, and various other subtleties, now happily forever put to rest by the passage of a statute making all such matters the subject of writing, and limiting their effect. The deliberation and full

understanding which will now accompany every such act, will necessarily relieve it of all uncertainty. We at first thought it worth while to endeavor to unravel the various cases which we have found on this subject, but have abandoned it, and cannot give our reason for doing so better than by quoting from the opinion of Judge Bronson in *Van Keuren vs. Parmelee*, 2 *Comst.*, 526, where he gives a very brief history of the statute of limitations:

" The statute of 21 *James*, 1, *c.* 16, which limited actions on promises to six years, was not very well received by the legal profession, and although the early decisions under it are not open to much observation, it was not long before the courts began to regard the statute with disfavor, and to resort to the most subtle constructions for the purpose of restricting its influence. There was a period when one who was spoken to on the subject of an old debt could not well give a civil answer without saying enough to take the case out of the statute. At a later period, and since the commencement of the present century, the courts began to regard this as a beneficial statute—a statute of repose—and commenced the difficult task of retracing their steps. But there were many obstacles in the way of the backward movement; and the legislature both here and in England took up the matter, and went beyond the old statute by requiring a new promise or acknowledgment to be in writing. In consequence of the early departure from principle in the construction of the statute, the different views which prevailed at different periods, and the unequal pace of the courts in attempting to get back on solid ground, the books are full of conflicting decisions, and any attempt to reconcile them would be a useless waste of time."— See also elaborate opinion of Judge Story, in *Bell vs. Morrison*, 1 *Peters' Rep.*, 351.

Did the question involved in this case depend for its solution upon the principles which have controlled in the cases we have examined, we would feel much safer in leaving the decided cases out of view as authority, and attempting to settle the rights of the parties upon principle regardless of them. We are constrained

to believe, however, that the case at bar depends solely upon our own statute, which is essentially different from that of England and New York, on the effect of a payment. These statutes, while requiring a writing in the case of a new promise or acknowledgment, leave the effect of a payment untouched.   9 *G.*, 4 *c.* 14; *New York Laws of* 1849, *p.* 638, *sec.* 110.

Before entering upon an examination of the peculiar provisions of our statute on the effect of a payment, we will notice one substantial distinction which existed in the case of payments made by one of several joint debtors, in taking the case out of the statute as to his co-debtors, and that was, whether the payment was made before the debt was barred by the statute or after it had run against it—many of the judges thinking that in the former case the payment would prevent the operation of the statute, while in the latter it would not.   Without saying more, than that we think there is some force in this distinction, we will take up our statute and endeavor to show that the legislature must have had that very point in mind when it framed the section upon which the case turns.

The ground work of our Code was that of New York, much of it is merely a transcript; therefore, wherever we find alterations, we must suppose them to be the work of particular design.   The section of the New York Code, from which our act on this point is taken, is as follows:

"No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this title [statute of limitations], unless the same be contained in some writing signed by the party to be charged thereby, but this section shall not alter the effect of any payment of principal or interest."   *N. Y. Code, sec.* 110.

Our revisors followed this section almost literally down to that point where the New York act speaks of the effect of a payment. They there terminate the section, leaving it to treat exclusively upon the subject of acknowledgments and promises, requiring them to be in writing, and binding only upon the party who signs

the same. A new section is then devoted exclusively to the effect of a payment of principal or interest, and is as follows:

"Whenever any payment of principal or interest has been or shall be made upon an existing contract, whether it be bill of exchange, bond, promissory note, or other evidence of indebtedness, if such payment be made after the same becomes due, the limitation shall commence from the time the last payment was made." *Comp Stats., p.* 534, *sec.* 24.

What is the meaning of the word "existing," in this section? Clearly it must have reference to the fact of the statute having run against the contract or not. A contract once made is an existing contract until it is paid or barred by the statute of limitations, or its obligation in some other way cancelled. When once paid or otherwise satisfied, except by the running of the statute of limitations, it cannot be revived by a payment at all. There can be very little doubt, therefore, that where the statute speaks of existing contracts, it expressly means such as are not barred by the statute of limitations. This section, then, has reference to payments only that are made upon contracts before the statute has run against them. Let us take this contract as an example, and see what the effect of the payment was. The contract was one which gave the Plaintiff a right of action against all three of the obligors, or either of them, at any time after it became due, unless this statute deprives him of it. *Section* 6, of the same chapter in which *section* 24 above quoted occurs, imposes a limitation of six years from the due date of the contract within which such right of action must be enforced, if it remains as the due day found it, and nothing occurs to change this limitation; or, in other words, if the contingency provided for in *section* 24 does not happen, of a payment being made of principal or interest before the lapse of the six years, in which case "the limitation shall commence from the time the last payment was made." What limitation is here meant? We think the limitation within which an action can be brought on the contract as made originally between the parties; or, in other words, that of *section* 6, which becomes operative *de novo* upon the particular

Whitaker v. Rice and Becker.

contract, "whether it be bill of exchange, bond, promissory note, or other evidence of indebtedness," and prevents any interruption of the obligation originally assumed, rather than continues or extends it for any additional period of time.

When a contract is entered into, even under the circumstances that color this, two of the obligors being sureties for the other, who was principal, they all understand their rights as defined by the statute. The principal is first, in equity and conscience, bound to pay. He should do so on the due day, but if he fails in this respect, then he should pay as soon thereafter as possible. All parties agree to this, and generally insist upon it. The statute defines explicitly the effect of such a payment upon the contract, if made within six years after it falls due, which we have endeavored to point out. No one has the right to complain. We do not think the principle of agency, so much discussed in the books when considering the effect of payment by one of several joint contractors, has any force whatever under our statute, where the payment is made before the contract is barred. The rights of the parties are defined from the beginning. What would be the effect of a payment made by one of several joint contractors on the rest, after the limitation had attached, would probably bring up all these old questions, because the statute, as will be observed, is entirely silent on the effect of such a payment—if indeed such silence, after specially providing for all the other modes of continuing and reviving contracts, might not be considered ignoring such a payment altogether.

The counsel for the Defendants insists that the legislature would not make a promise binding only upon the party making it, and give the payment of principle or interest greater force, so as to bind all parties. The fact that these two subjects are carefully separated, and the effect of an acknowledgment or promise specially limited to the party making it, while no such limitation is attached to the act of payment on an existing debt, would argue that it was done by design, and intended in one case to have that restricted operation and not in the other. But when this fact is considered with the peculiar wording of the statute, and the just

obligations of the parties, there can be very little doubt that the whole subject was arranged *ex industria.* When such a contract is entered into, all parties assume the obligation to pay, up to a certain point. The effect of a payment should not be considered solely among the debtors, but taken in connection with the creditor. They all have rights. It is quite fashionable when a creditor does not force payment at the day, to call him careless and negligent, and say he ought to lose his debt for his *laches.* His delays are more often attributable to mercy than any worse motive, and debtors should not generally complain in such cases. The statute, by giving the creditor a longer time to wait, when the debtor shows his good intentions by paying what he can, was designed more for the benefit of the latter than the former. Now all these mutual obligations continue until the contract ceases to exist, or until the same is barred, which we think are synonymous terms under this statute. But a very different rule would obtain in relation to acknowledgments of the debt, or promises to pay it. Nothing of the kind enters into the original obligation of the parties, or is in any manner inferrable from their contract. So there is every reason why such an undertaking should bind only such debtor as sees fit to make it: and the same reason might well be urged against any payment made on a debt after the same had ceased to be an existing one, by the statute of limitations attaching to it. This may be the reason why nothing is said about it in the statute. The three points of acknowledgments, promises, and payments, were clearly in the minds of the legislators in the passage of this statute of limitations. The two first they provided for definitely. The last they regulated so far as relates to contracts before the statute has attached; and as to payments made after a contract is barred, they were silent, which will either give rise to an amendment or a construction of the statute on that point when a proper case arises.

We think the court erred in its ruling on this point, and that the Plaintiff should have judgment for the sum found due upon the bond. The judgment must be reversed, and judgment entered for the Plaintiff upon the findings of the court for the sum due on the bond.