Argued December 9, 1896; decided March 16, 1897.

## DUNDEE INVESTMENT CO. v. HORNER.
### (48 Pac. 175.)

LIMITATION OF ACTIONS—SECTION 24 OF HILL'S CODE AS A RULE OF EVIDENCE.—The effect of any payment of principal or interest with regard to the running of the statute of limitations is not influenced by section 24 of Hill's Code, providing that no acknowledgment or promise shall be sufficient evidence of a new or continuing contract to take a case out of the operation of the statute, unless the same is in writing, signed by the party to be charged; this simply prescribes the character of evidence by which the acknowledgment or promise shall be proven, and in no wise affects the legal consequence of a part payment.

STATUTE OF LIMITATIONS—EFFECT OF PART PAYMENT—CODE, § 25.— Section 25, Hill's Code, providing that whenever a part payment is made on an existing debt the limitation shall commence from the date of the last payment, applies only to payments before the statute has run, and does not operate to revive a debt that has already expired: *Creighton* v. *Vincent*, 10 Or. 56, cited and approved.

WHEN PART PAYMENT WILL NOT TOLL THE STATUTE OF LIMITATIONS.—A payment on a debt by a person who is in no way liable to the creditor, and who has no property interest to be protected against the enforcement of the debt, will not prevent the running of the statute of limitations in favor of the persons liable thereon, or on whose property it is a charge. This rule is not affected by section 25 of Hill's Code, providing that whenever any payment of principal or interest is made on an existing contract after the same becomes due, the limitation shall commence from the time the last payment is made.

IDEM.—One who purchases mortgaged premises without assuming payment of the mortgage has no such interest after a sale of the premises on a covenant of warranty as will make a payment by him on the mortgage debt effective to remove the bar of the statute of limitations as against either the person liable for the debt or the owner of the land.

STATUTE OF LIMITATIONS—PAYMENT BY GRANTEE OF MORTGAGOR.— The mere fact that the mortgagor's grantee is liable on his covenants of warranty does not make his payments effective to toll the statutes, either against the original debtor or the subsequent grantees.

From Multnomah: LOYAL B. STEARNS, Judge.

Suit by the Dundee Mortgage & Trust Investment Company against Josiah Horner and others to foreclose

a mortgage. From a decree entered after overruling a demurrer to the complaint, the defendants appeal.

Reversed.

For appellants there was a brief over the names of *William W. Page* and *John T. Milner*, with an oral argument by *Mr. Page*.

For respondent there was a brief over the name of *Bronaugh, McArthur, Fenton & Bronaugh*, with an oral argument by *Mr. Wm. D. Fenton*.

Opinion by Mr. Justice Bean.

This is a suit to foreclose a mortgage, and the sole question is whether payments made thereon by a grantee of the mortgagor, after he has sold and conveyed the mortgaged premises by warranty deed, will prevent the statute of limitations from running in favor of his grantees. The facts are that on November 18, 1876, the defendants Horner and wife gave to plaintiff's assignor a mortgage on certain real property in the City of Portland to secure a loan of $1,200, payable in installments, the last of which became due on the 1st day of December, 1881. A short time thereafter Horner conveyed the mortgaged premises to one A. P. Ankeny, and he to A. J. Watson, who, prior to August 25, 1880, sold and conveyed the same in separate parcels to sundry persons, who are either parties to this suit or the grantors of such parties. The several deeds under which the defendants deraign title from Horner contain general covenants of warranty against the lawful claims and demands of all persons, but, so far as the record discloses, no reference whatever was made in any of them to the mortgage in question. After Watson had sold the property, he paid the

interest on the mortgage debt up to the time of his death, and thereafter his administratrix continued to do so until December 1, 1891, since which time no payments whatever have been made. This suit was commenced on the 17th day of November, 1893, more than ten years after the cause of suit accrued, and more than ten years after Watson parted with his estate in the mortgaged premises, and is therefore barred by the statute of limitations unless the payments made by him after he ceased to own the property had the effect to prevent the running of the statute.

The provisions of our statute in reference to the effect of a part payment on an obligation of the kind under consideration differ in some respects from that in force at this time in any other state, so far as we have been able to ascertain, and therefore the authorities cited and examined throw but little light upon the question before us, except as they may elucidate the general principles by which such questions are governed. Section 24 of Hill's Code, which provides that no acknowledgment or promise shall be sufficient evidence of a new or continuing contract to take a case out of the operation of the statute, unless the same is in writing signed by the party to be charged, does not alter the effect of any payment of principal or interest. It simply prescribes the character of evidence by which such acknowledgment or promise shall be proven, but in no way affects the legal consequence of part payment. A like provision is in force in most of the states, and under it, by the consensus of authority, a part payment, to take a case out of the operation of the statute, must have been made by the party to be charged with the effect of it, or by his authority. This rule is founded upon the principle that a part payment is considered an acknowledgment by the debtor of his liability for the whole amount due, from which a new promise to

pay the residue is implied, thus forming the basis of a new contract supported by the original consideration; and, under this theory, such payment must necessarily be made by some person having authority to make such a contract on behalf of the party to be charged: 1 Wood on Limitations, 280; 13 Am. & Eng. Enc. Law (1st Ed.), 760; *Shoemaker* v. *Benedict*, 11 N. Y. 176 (62 Am. Dec. 95); *First National Bank of Utica* v. *Ballou*, 49 N. Y. 155; *Harper* v. *Fairley*, 53 N. Y. 442. So that, if this was the only statutory provision in reference to the effect of part payment, the question before us would be of easy solution, for it is not contended that Watson had power or authority to make a new contract or promise on behalf of any of the defendants to this suit.

Our legislature has, however, dispensed with the theory of a new cause of action based upon a new promise, by section 25 of Hill's Code, which declares that "whenever any payment of principal or interest" is made "on an existing contract, whether it be a bill of exchange, promissory note, bond or other evidence of indebtedness," after the same becomes due, "the limitation shall commence from the time the last payment was made." This section, it has been held, refers only to payments made before the statute has run, and fixes by such payment a new date for the running of the statute: *Creighton* v. *Vincent*, 10 Or. 56. Its effect is to make the fact of such part payment operate as a continuation of the original promise, while, under the rule prevailing elsewhere, the payment is only evidence of a new promise, which, being supported by the original consideration, becomes substantially the basis of a new cause of action: 1 Wood on Limitations, 287. In other words, under the statute, the payment prevents any interruption of the original obligation. It simply fixes the time when the statute commences to run, and does not operate, by means of a new promise, to take a case out of

a statute which is already running at the time the payment is made. At least, this is the effect of the construction put upon the statute by the adjudications of this court, and it has therefore been held that payment by any person liable, directly or in a representative capacity, will keep the debt alive as to all persons liable thereon, whether such payment was made by their authority or not: *Partlow* v. *Singer*, 2 Or. 307; *Sutherlin* v. *Roberts*, 4 Or. 378; *Allen* v. *O'Donald*, 28 Fed. 346. ʻ A similar statute was in force in Minnesota from 1864 to 1866, and under it the court held that payment by the principal debtor before the statute of limitations had run against the obligation took the same out of the statute, as against his sureties, although such payment was made without their knowledge or consent: *Whitaker* v. *Rice*, 9 Minn. 13 (86 Am. Dec. 78). But this doctrine fell with the repeal of the statute upon which it was based: *Willoughby* v. *Irish*, 35 Minn. 63 (59 Am. Rep. 297, 27 N. W. 379).

It is not believed, however, that, even under this statute, a payment made by a person who is in no way liable to the creditor, and who has no property interest to be protected against the enforcement of the debt, will prevent the running of the statute in favor of the persons liable thereon, or upon whose property it is a charge. Statutes of limitation are no longer based upon a mere presumption of payment arising from the lapse of time, but are now considered as statutes of repose, intended to afford security against stale demands, the benefit of which may be relinquished by the party interested, but ought not to be taken from him without his consent. And, while our statute dispenses with the theory of a new contract or promise, it does not change the rule that a part payment must be made under such circumstances as will amount to a continuation of the original promise. It simply declares the effect of a payment to be the establishment of a

new point of time from which the statute shall run, divested of all the subtleties which have grown up around the subject. But, in order to have that effect, the payment must have been made by some one who is authorized to consent to the continuation of the original liability. Watson was not such a person; he was in no way liable upon the original debt, and had no interest in the mortgaged property at the time the payments were made, and therefore no act of his could be deemed an admission of a continuing liability either on the note or mortgage.

It is claimed, however, that he was entitled to pay the mortgage in order to protect himself against his covenants of warranty; but, if such is the case, his payment would amount only to an admission of a possible liability on the covenants of warranty, and not on the mortgage. Although his covenants of warranty entitled him to compel the mortgagee to accept payment of the mortgage, they would not render such payments effective to toll the statutes, either against the original debtor or his grantees, because he had no power to affect the parties liable by any admission or acknowledgment of his. He never was liable on the mortgage debt, and when he disposed of his interest in the land, all control over it ceased, and he became thereafter a stranger as to the mortgaged premises, and could by no subsequent act of his create, continue, or revive charges thereon. It follows that the decree of the court below must be reversed, and the demurrer to the complaint sustained.

REVERSED.