Argued March 31, decided April 27, rehearing denied October 11, 1910.

## KAISER v. IDLEMAN.

[108 Pac. 193.]

LIMITATION OF ACTIONS—RUNNING OF LIMITATIONS—BARRING OF REMEDY.

1. The running of limitations on a note does not extinguish the right, but merely the remedy.

LIMITATION OF ACTIONS—BAR OF DEBT AS AFFECTING SECURITY.

2. A mortgage to secure the payment of the debt evidenced by a note may be enforced though the remedy on the note is barred by limitations, and though the mortgage is, for certain purposes, a mere incident of the note, and passes with it.

LIMITATION OF ACTIONS—PARTIAL PAYMENT—EFFECT.

3. A partial payment on a contract for the payment of money tolls the statute of limitations, because such payment operates to continue and keep in force the original promise.

STATUTES—CONSTRUCTION—MEANING OF WORDS.

4. The rule that, where general words in a statute follow an enumeration of particular things, such words include only such things as are of the same kind as those specifically enumerated, is but a rule of construction to aid in ascertaining the meaning of the legislature, and it does not warrant the court in confining the meaning of the statute within narrower limits than that intended by the legislature.

LIMITATION OF ACTIONS — MORTGAGES — PART PAYMENT —"EVIDENCE OF INDEBTEDNESS.

5. A mortgage is an evidence of indebtedness within Section 25, B. & C. Comp., providing that payment of principal or interest on any bill of exchange, promissory note, bond, or "other evidence of indebtedness," shall make limitations run from the time of such payment, and a part payment on a note, or on the mortgage securing it, tolls the statute as to the mortgage.

VENDOR AND PURCHASER—BONA FIDE PURCHASER—CONSTRUCTIVE NOTICE.

6. Under Section 5359, B. & C. Comp., providing that conveyances of real property not recorded within five days after their execution are void as to subsequent good-faith purchasers, the recording of a mortgage is constructive notice to subsequent purchasers; but a mortgagee who has recorded his mortgage may assume that the mortgagor continues to own the property, and he may deal with him as such owner, and, though he has notice of a transfer by the mortgagor, he may assume that the purchaser has informed himself of the condition of the title, and has taken it subject to the mortgage.

LIMITATION OF ACTIONS—MORTGAGES—PART PAYMENT.

7. Under Sections 5, 24, 25, B. & C. Comp., fixing the time for the commencement of actions on notes and on sealed instruments, and providing that the effect of any payment of principal or interest shall not be altered by the fact that no promise is sufficient evidence of a new contract unless the same is in writing and signed by the party to be charged, and that any payment of principal or interest on any bill of exchange, note, bond, or other evidence of indebtedness shall make limitations commence from the time of such payment, a part payment by a mortgagor, made after he has conveyed the property, but before the running of limitations, arrests the operation of limitations, but a payment after the debt has been barred does not revive the debt to the prejudice of his grantee.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is a suit by W. M. Kaiser and Angie L. Warren, as co-executors of the last will and testament and estate of Tilmon Ford, deceased, against C. M. Idleman, W. H.

Sig. 8

Black, Eleanor A. Black and the city of Independence, a municipal corporation, to foreclose a certain mortgage given by the defendant, C. M. Idleman to the decedent, Tilmon Ford. The facts are as follows:

On March 26, 1892, Tilmon Ford, plaintiffs' testator, loaned to C. M. Idleman $4,000, taking therefor his promissory note payable two years after date, secured by a mortgage on certain real estate in Marion County. The mortgage contained the following covenant: "And the said C. M. Idleman does hereby covenant and agree to and with the said Tilmon Ford, his heirs and assigns, that he will pay the said principal and interest as the same become due according to the terms of said instrument of writing, to the owner or holder thereof, and will also pay, or cause to be paid to the proper authorities, before the same become delinquent, all taxes of every kind that may be lawfully levied or assessed upon said instrument of writing or this mortgage, to the owner or holder thereof." The mortgage was duly recorded on the day of its execution. Idleman conveyed the land, on September 15, 1892, to Eleanor A. Black, by a warranty deed, and in January, 1906, she conveyed the same to W. H. Black, her husband, who has ever since held the legal title. The complaint alleged that there had been paid, by Idleman, on the note and mortgage, various sums, which—with the date of each payment—are specifically set out in the complaint, the payments having been made in 1896, 1897, 1898, 1901, and 1907, respectively, each having been made before a period of six years had elapsed after the date of the preceding payment. The defendants, appearing separately, demurred to the complaint, on the ground that the suit was barred by the statute of limitations. The circuit court sustained the demurrer and dismissed the suit. Plaintiffs appeal.                                REVERSED.

For appellants there was a brief over the names of *Mr. William M. Kaiser* and *Mr. Myron E. Pogue,* with an oral argument by *Mr. Pogue.*

For respondents there was a brief over the names of *Mr. A. E. Clark, Mr. L. H. McMahan* and *Mr. Cicero M. Idleman,* with an oral argument by *Mr. Clark.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

This appeal involves but one question: Did the payments made by Idleman upon the debt after he had conveyed the property to Mrs. Black operate to prevent the statute of limitations from running in her favor? By the provisions of Section 5, Title I, B. & C. Comp., the limitation for the commencement of suits upon a sealed instrument is declared to be 10 years, and the limitation for an action upon a promissory note is fixed at six years by the succeeding section. Section 24 of the same title is as follows:

"No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest."

Section 25 reads:

"Whenever any payment of principal or interest has been or shall be made upon any existing contract, whether it be bill of exchange, promissory note, bond, or other evidence of indebtedness, if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made."

1. With the foregoing provisions of the statute in view we will now proceed to examine the question, which, for the first time, comes before this court for decision. It is of far-reaching importance, and there is much diversity of opinion found in the decisions of various courts in regard to it, and before discussing them, perhaps it is well to consider the question upon principle. Primarily a contract of this kind is an agreement to repay a sum of money borrowed. The note did not constitute the debt; neither

did the mortgage. The first was evidence of the debt, and the second—in addition to being evidence of its existence —furnished a security for its payment. As a legal colloquialism, we speak of owing a sum of money on a note or a mortgage. But what, in fact, is meant by this phrase is that we owe a debt evidenced by a note or secured by a mortgage. Hence, when money is borrowed and a note and mortgage given as security for its repayment, or as evidence of the terms and duration of the contract, for many purposes the note and mortgage constitute but one contract, a contract to repay money. It is true that there may be two remedies open to the creditor for the recovery of his money, but both arise out of the breach of one duty, which the law imposes upon the debtor, namely, to pay his debt according to the terms of his agreement. The law has wisely provided, in effect, that a promissory note, upon which no payments have been made for a period of six years, shall cease to be valid as evidence of a debt, by providing that, after such lapse of time, it may not be declared upon as a substantive cause of action. The right is not extinguished, but the remedy—the efficient means of enforcing the right—is taken away.

2. But if a mortgage has been given to secure the payment of the same debt, being a higher and more formally executed evidence of it, the law, notwithstanding it has taken away the remedy upon the note, has provided that the mortgage shall be evidence of the original obligation for a longer period; that is, ten years. The note being by the law merchant readily transferable by indorsement and delivery, the courts, to facilitate the transaction of business, have held that, for certain purposes, the mortgage is an incident of the note, and passes with it; but it is no less true that both the note and mortgage are incidents of the original debt, and, taken together, they constitute the evidence provided by law to prove and render certain performance of the original contract of

borrowing, and from the terms of a note and contemporaneous mortgage we get the complete contract between the parties.

3. A partial payment upon a contract for the payment of money has always been held to toll the statute of limitations. In some jurisdictions this is held to be upon the theory that a new promise is thereby implied, and that a new period of limitations begins from the date of such promise, but in this state it is held that such result does not ensue by reason of a new promise, but that such part payment operates to continue and keep in force the original promise: *Dundee Invest. Co.* v. *Horner*, 30 Or. 558 (48 Pac. 175).

4. Applying these rules to the case at bar, it would seem that a payment by the debtor upon the note and mortgage—*i. e.,* upon the mortgage debt—as alleged here, or a payment upon either, would serve to toll the statute as to both. Indeed, there would be no room for contention to the contrary had Idleman, the original mortgagor, retained the legal title to the mortgaged premises, unless, as contended by defendants, the provisions of Section 25 do not embrace mortgage debts. It is contended that the words, "bill of exchange, promissory note, bond, or other evidence of indebtedness," do not, under the rule of *ejusdem generis,* include mortgages, but are limited to instruments not under seal, and of like character to those specified. The rule is stated by a leading author as follows: "When general words follow an enumeration of particular things, such words must be held to include only such things or objects as are of tne same kind as those specifically enumerated." 2 Lewis' Sutherland Stat. Const. (2 ed.) § 422. "The doctrine of *ejusdem generis* is but a rule of construction to aid in ascertaining the meaning of the legislature, and does not warrant a court in confining the operation of a statute within narrower limits than intended by the law-

makers. The general object of an act sometimes requires that the final term shall not be restricted in meaning by its more specific predecessors." *Willis* v. *Mabon,* 48 Minn. 140 (50 N. W. 1110: 16 L. R. A. 281: 31 Am. St. Rep. 626).

5. In the section now under consideration the first language used is "payment * * upon any existing contract, whether it be bill of exchange, promissory note, bond, or other evidence of indebtedness." Here the general words precede the special enumeration, and certainly the words "any existing contract" are sufficiently broad to characterize the whole section. Moreover, a bond—by its very definition—is an instrument under seal, a specialty, and not so different from a mortgage, in the formalties required in its execution, that the latter is unfit to be associated with it in a statute. A mortgage is within the reason of the enactment. It may be given in connection with a promissory note or bond, or may contain the complete contract within itself, but in either case there is no reason for denying a payment made upon such a contract the same efficacy that it would have if made upon a promissory note or bill of exchange. A mortgage is certainly an "evidence of indebtedness," and not infrequently the only evidence: *Chase* v. *Ewing,* 51 Barb. (N. Y.) 597. We conclude, therefore, that a part payment, either upon the note or mortgage, will toll the statute as to the mortgage. In this conclusion we are supported by the authority of decisions rendered in cases arising in this state: *Sutherlin* v. *Roberts,* 4 Or. 378; *Allen* v. *O'Donald* (C. C.) 28 Fed. 346; *Cross* v. *Allen,* 141 U. S. 528 (12 Sup. Ct. 67: 35 L. Ed. 843).

6. The next and most difficult question is: Who is authorized to make such payment? On principle it would seem clear that the person who contracted the debt, gave the note, and executed the mortgage would be the only one to whom the creditor should be required to look for

fulfillment of his obligations. Under Section 5359, B. & C. Comp., conveyances of real property not recorded within five days after their execution are void as to subsequent purchasers in good faith of the same property. In other words, the recording of a mortgage is constructive notice to subsequent purchasers, but there constructive notice ceases. Having recorded his mortgage, the mortgagee is not compelled to watch the records to see whether or not the mortgagor has sold the property, but has a right to assume that he still owns it, and to deal with him as such owner. And even if he has notice of a transfer of the legal title, he has a right to assume that the purchaser has informed himself of the condition of the title, and taken it subject to incumbrances that are shown by the record to have a valid existence. It is always in the power of a purchaser, before paying the purchase money, to make himself secure against an existing incumbrance, and, if he fails to do so, he ought not to require a mortgagee to be more diligent to protect him than he has been to protect himself. The weight of authority seems to indicate that a payment upon the mortgage debt by the original debtor, before the statute has run, has the effect to arrest its operation.

"A purchaser with actual notice of the mortgage, or constructive notice by means of a registry, can avail himself of the presumption of payment from lapse of time only when the mortgagor could avail himself of it under the same circumstances. The grantee succeeds to the estate, and occupies the position of his grantor; * * as, for instance, the purchaser of a part of the mortgaged premises cannot claim a presumption of payment of the mortgage from lapse of time when this presumption is repelled by payments of interest made by the mortgagor within twenty years, or by his admission within this time that the mortgage was then subsisting." 2 Jones, Mortgage, § 1202.

While the language above quoted was used by the author in reference to mortgages in jurisdictions where no statute of limitations existed, but where a lapse of twenty years was held to create a presumption of pay-ment, we see no essential difference, in principle, between such a condition and that existing in the case at bar. If part payment by a mortgagor, after he has parted with his title or equity of redemption, can rebut the presumption of payment arising from lapse of time, to the prejudice of his grantee, it would seem to follow naturally that part payment by a mortgagor, similarly situated, would keep the mortgage alive under our statute of limitations.

The case of *Kendall* v. *Tracy, Hathaway & Hathaway,* 64 Vt. 522 (24 Atl. 1118), is in point on the matter at bar. In 1866 Kendall sold a farm to Tracy, taking his promissory note and mortgage on the farm in payment. In 1871 Tracy sold a portion of the farm to the Hath-aways, who entered into possession and made extensive improvements. In 1889 Kendall brought suit to foreclose his mortgage. Tracy had made partial payments on the note from time to time to keep it alive. The defendants Hathaway pleaded the statute of limitations as to them-selves. The court said: "The defendants cannot avail themselves of the statute of limitations. They could acquire by their deed no better title than Tracy had, which title he held subject to the petitioner's mortgage, and that mortgage was kept from the operation of the statute by payments made by Tracy to the petitioner." In *Barrett* v. *Prentiss,* 57 Vt. 297, the court say:

"Was the claim barred by lapse of time? The payment was made by Prentiss, the maker of the mortgage and notes, after he had sold and quit possession of the prem-ises. He was liable upon the notes as maker; and a pay-ment made by him, we hold, would rebut the presumption that the mortgage debt nad been paid, not only as to him, but as to all who were grantees under him, they having

taken their interest with constructive notice of the mortgage."

In *Mack* v. *Anderson,* 165 N. Y. 529 (59 N. E. 289), the court, speaking of the effect of a payment made by a mortgagor after parting with his title, says:

"The mortgagor could, of course, have kept the debt alive as to the Andersons, by making payments within the period of limitation, even without their knowledge or consent. Such payments would have bound the Andersons, not upon the theory that the mortgagor was their agent, but because the latter was simply paying his own debt, with which the land of the former was burdened."

Nothing could be more applicable to the case at bar than the language above quoted. Idleman, the mortgagor, could have kept the debt alive as to the Blacks by making payments within the period of limitations, even without their knowledge or consent. See, also, *Perry* v. *Horack,* 63 Kan. 88 (64 Pac. 990: 88 Am. St. Rep. 225); *Jackson* v. *Longwell,* 63 Kan. 93 (64 Pac. 991); *Teegarden* v. *Burton,* 62 Neb. 639 (87 N. W. 337). We conclude, therefore, that payments by Idleman, before the statute had barred the action on the note, tolled the statute, not only as to him, but as to defendants as well.

We have examined the authorities submitted by defendants' counsel, and fail to discover that any one of them covers the exact point in issue: *Colonial Mortgage Co.* v. *Northwest Thresher Co.,* 14 N. D. 147 (103 N. W. 915: 70 L. R. A. 814: 116 Am. St. Rep. 642), merely holds that the absence of the original mortgagor from the state does not toll the statute of limitations as to his subsequent grantee. Although the course of reasoning by which the learned court arrived at this conclusion is somewhat unique, the conclusion itself is sound and fully in accord with the holding in this state: *Anderson* v. *Bexter,* 4 Or. 105. The case of *Lord* v. *Morris,* 18 Cal. 482, is not in point. In that case the mortgagors, after

sale of the property, and after the statute had run, attempted to renew the note and debt; and it was held that they could make no new promise to the prejudice of their grantee. Some dicta used by the court in its opinion would seem to be favorable to plaintiffs' contention, but it must be taken to refer to the facts before the court, and be construed with those facts in view. In the case of *Day* v. *Baldwin,* 34 Iowa 380, Baldwin, the original mortgagor, attempted to revive the mortgage debt as against his grantee after the right of action had become barred, and it was held that such recognition of the mortgage would not bind the grantee. The case of *Cook* v. *Prindle,* 97 Iowa 464 (66 N. W. 781: 59 Am. St. Rep. 424), was a similar case, and the decision followed the rule announced in *Day* v. *Baldwin,* 34 Iowa 380. In *Zoll* v. *Carnaham,* 83 Mo. 35, it was contended that the absence of the vendee, against whose property a vendor's lien existed, tolled the statutes as to his subsequent grantee, and the court held adversely to this contention. What was said in the opinion in regard to the effect of a part payment by the mortgagor, under such circumstances, was not predicated upon any fact appearing in the case, and is pure dictum. The case of *Kendall* v. *Clarke,* 90 Ky. 178 (13 S. W. 583), arose upon an attempt to enforce a vendor's lien against a grantee of an original vendee. The court held squarely in that case that a payment by the vendee would not keep the lien alive against his grantee. The disfavor with which courts view vendor's liens may have accounted for this decision, though it does not so appear, and we concede this case to be fairly in point, as sustaining defendants' contention, but in view of the weight of authorities to the contrary, as well as what we deem, upon reason, to be the safe and salutary rule, we decline to adopt the reasoning of the case cited. In *Trustees* v. *Smith,* 52 Conn. 434, the maker of a note and mortgage conveyed his equity of

redemption to a third party, who from time to time, for fifteen years following, paid interest on the note. It was held that this did not toll the statute as to the original mortgagor. The reason given is that the party making the payments was not liable on the note, and that he was not in such privity with his grantor as to be his agent for the purpose of making a new promise. It will be seen that this decision proceeds upon the theory that a part payment constitutes a new promise, and must therefore be made by a joint debtor or some one having actual or implied authority to bind the original maker, a doctrine expressly repudiated in this state in *Dundee Invest. Co.* v. *Horner,* 30 Or. 558 (48 Pac. 175). The case of *Schmucker* v. *Sibert,* 18 Kan. 104 (26 Am. Rep. 765), is another case in which an attempt was made to revive a debt already barred by the statute and is not in point here.

7. Without pursuing the subject further, it is sufficient to say that, outside of the case of *Kendall* v. *Clarke,* 90 Ky. 178 (13 S. W. 583), which we deem unsound, and *Trustees* v. *Smith,* 52 Conn. 434, which is based upon a construction of the statute of limitations different from that which prevails in this jurisdiction, the other cases cited resolve themselves into two classes: (1) Those in which it is held that absence from the state will not toll the statute as to a grantee of the mortgagor; (2) those in which it is held that a payment by the mortgagor, after the statute has run, will not revive the debt as against his grantee. The distinction between these cases and the one at bar is this: (1) In this state a part payment continues and keeps alive the original promise, while the absence of the primary debtor from the state has no such effect. (2) The revival of a debt after it has once been barred is in the nature of a new promise or contract, not a continuation of the old; and

a mortgagor has no authority to make such new promise to the prejudice of his grantee.

It follows the conclusions here arrived at that the decree of the court below should be reversed, and the demurrer overruled, and the cause remanded for further proceedings not inconsistent with this opinion.

REVERSED.