Argued May 8, modified June 6, 1917.

## STATE LAND BOARD v. LEE.*

(165 Pac. 372.)

**Limitation of Actions—Statutes—Applicability to State.**

1. It is a rule that the government is not included in a general statute of limitations unless expressly or by necessary implication included.

**Limitation of Actions—Statutes—Applicability to State.**

2. Although the state is not named, if it appears that it is the real party in interest, a limitation statute which does not expressly or by necessary implication include the state will not be permitted to operate.

**Constitutional Law—Obligation of Contracts—State.**

3. The state, like a private person, is prohibited from impairing the obligation of a contract entered into by it.

**Constitutional Law — Impairing Obligation of Contracts — Statute of Limitation.**

4. A pure statute of limitation affects the remedy, and not the debt, and does not impair any obligation imposed by contract.

[As to the general theory and policy of the statute of limitation, see note in 95 Am. St. Rep. 656.]

**Limitation of Actions—Statutes—Applicability to State—"Real Party in Interest."**

5. Under Laws 1913, pages 580, 581, Sections 1, 2, 3, providing that no mortgage upon real estate heretofore or hereafter given shall be a lien or encumbrance after the expiration of ten years, etc., does not apply to the foreclosure by state land board of a mortgage given to secure moneys borrowed from the irreducible school fund; the state being the real party in interest, although proceedings are in the name of the state land board.

From Union: JOHN W. KNOWLES, Judge.

In Banc.    Statement by MR. JUSTICE HARRIS.

This is a suit to foreclose a note and mortgage given to the state land board by George H. Osborn and his wife Mary E. Osborn.    The note is dated October 13, 1902; recites that it is for $700 "borrowed on account

---

*As to applicability of statute of limitations to action by agencies of state, see notes in 3 L. R. A. (N. S.) 746; 22 L. R. A. (N. S.) 921; L. R. A. 1916E, 96.

As to the immunity of the state from the statute of limitations and laches, see title "Limitations of Actions," 17 R. C. L., Sections 344, 345.                                                                            REPORTER.

of the irreducible school fund," bears interest at the rate of 6 per cent per annum, and by its express terms became due "one year after date." The note was secured by a mortgage on 480 acres of land in sections 10 and 15 of a designated township. No payments were made on the principal of the note. Payments were made on the interest from time to time, the last payment being on March 19, 1913, when the interest was satisfied to August 5, 1912.

The land in section 15 was conveyed to E. T. Kaster and C. J. Forsstrom on August 7, 1911, while the remainder of the mortgaged premises was acquired by Ed Lee and F. M. Lee prior to December 20, 1915, when this suit was commenced by the state land board. The present owners of the land purchased with notice of the mortgage; and hence if the mortgage is enforceable against the mortgagors it is likewise enforceable against the subsequent purchasers of the land.

The defendants resisted the attempt to foreclose the mortgage by interposing Chapter 304, Laws 1913. The statute reads thus:

"Section 1. No mortgage upon real estate now, heretofore or hereafter given, shall be a lien or encumbrance, or of any effect or validity for any purpose whatsoever, after the expiration of 10 years from the date of the maturity of the obligation or indebtedness secured or evidenced by such mortgage, or from the date to which the payment thereof has been extended by agreement of record. If the date of the maturity of such obligation or indebtedness is not disclosed by the mortgage itself, then the date of the execution of such mortgage shall be deemed the date of the maturity of the obligation or indebtedness secured or evidenced by such mortgage.

"Section 2. After 10 years have elapsed from the date of maturity of any mortgage upon real estate, as herein provided in section 1 of this act, such mortgage

shall conclusively be presumed to be paid, satisfied and discharged, and no action, suit or other proceeding shall be maintainable for the foreclosure of the same.

"Section 3. This act shall not take effect until the first day of January, A. D. 1914; after which date the same shall be in full force."

The trial court awarded a judgment against the makers of the note for the principal and interest due, an attorney's fee and costs and disbursements; but a decree foreclosing the mortgage was refused on the theory that the lien of the mortgage was released on January 1, 1914. The state land board appealed.

MODIFIED.

For appellant there was a brief over the names of *Mr. Colon R. Eberhard, Mr. George M. Brown,* Attorney General, and *Mr. Isaac H. Van Winkle,* Assistant Attorney General, with oral arguments by *Mr. Eberhard* and *Mr. Brown.*

For respondents there was a brief over the names of *Mr. Charles H. Finn* and *Mr. R. J. Kitchen,* with an oral argument by *Mr. Finn.*

MR. JUSTICE HARRIS delivered the opinion of the court.

It is conceded that the payment of interest tolled the statute of limitations as against the note and that therefore the plaintiff is entitled to a judgment for whatever sums may be due on the note: Section 25, L. O. L. The defendants contend, however, that Chapter 304, Laws 1913, bars the plaintiff from enforcing the lien of the mortgage. The parties did not make any agreement of record extending the time for payment; more than 10 years expired from the date of the

84 Or.—28

maturity of the note before the commencement of this suit; and hence the mortgage cannot be foreclosed if Chapter 304, Laws 1913, is available to the defendants, although the note which the mortgage was designed to secure can be reduced to a money judgment. The question for final decision is whether the statute applies to mortgages given to secure moneys borrowed from the irreducible school fund. The defendants argue that Chapter 304 is a statute of limitation and that the language of the enactment is sufficiently comprehensive to embrace mortgages given to the state land board to secure money borrowed from the irreducible school fund. The plaintiff contends that this is in reality a suit by the state and that if Chapter 304 is assumed to be a statute of limitation, it does not embrace the state for the reason that the state is neither expressly mentioned nor included by necessary implication.

1. Stated in broad terms, it is a rule of universal recognition that the government is not included in a general statute of limitation unless it is expressly or by necessary implication included. This rule is said to be founded upon the legal fiction expressed in the maxim *nullum tempus occurrit regi.* However, it is not necessary to predicate this salutary precept upon any fiction, since sound reason for the rule is found in the fact that as a matter of public policy it is necessary to preserve public rights, revenues and property from injury and loss by the negligence of public officers: *State* v. *Warner Valley Stock Co.,* 56 Or. 283, 308 (106 Pac. 780, 108 Pac. 861); *United States* v. *Nashville, C. & St. L. Ry. Co.,* 118 U. S. 120 (30 L. Ed. 81, 6 Sup. Ct. Rep. 1006); *Catlett* v. *People,* 151 Ill. 16 (37 N. E. 855); *State* v. *Fleming,* 19 Mo. 607; *Blazier* v. *Johnson,* 11 Neb. 404 (9 N. W. 543); *Gibson* v. *Chou-*

*teau,* 13 Wall. (U. S.) 92 (20 L. Ed. 534); *State* v.
*School Dist.,* 34 Kan. 237 (8 Pac. 208); Buswell on Limitations and Adverse Possession, § 97; 19 Am. & Eng.
Enc. Law (2 ed.), 188; 25 Cyc. 1006; 36 Cyc. 1171.

For the purpose of avoiding the common-law rule
exempting the government from limitation statutes
the legislature passed a statute in 1862 which provided
that:

"The limitations prescribed in this title shall apply
to actions brought in the name of the state, any county
or other public corporation therein, or for its benefit,
in the same manner as to actions by private parties":
Section 13, Deady's Code.

This statute remained unchanged until 1903, when
the legislature amended it so as to read thus:

"The limitation prescribed in this title shall not
apply to actions brought in the name of the state, or
any county, or other public corporation therein, or for
its benefit * * ": Section 13, L. O. L.

Another section provided that a suit shall only be
commenced within the time limited to commence an action: Section 391, L. O. L. From 1862 until 1903,
statutes of limitation applied to the state and private
persons alike, for the sole reason that the state acting
through its legislature had expressly consented that
limitation statutes be made applicable to the commonwealth.

That the legislature recognized the existence of the
common-law rule exempting the government is conclusively proved by the passage of the act of 1862, because
if the common-law rule did not at that time prevail in
this jurisdiction, then the enactment of the statute of
1862, so far as made applicable to the state, was a work
of supererogation; and, moreover, whenever the courts
applied the bar of a statute of limitation to an action

prosecuted by the state they did so only because the limitation statute had been made applicable to the state by an express legislative enactment: *State* v. *Baker County,* 24 Or. 141, 146 (33 Pac. 530); *Schneider* v. *Hutchinson,* 35 Or. 253, 254 (57 Pac. 324, 76 Am. St. Rep. 474); *Wallowa County* v. *Wade,* 43 Or. 253, 260 (72 Pac. 793); *State* v. *Portland Gen. Elec. Co.,* 52 Or. 502, 515 (95 Pac. 722, 98 Pac. 160); *State* v. *Warner Val. Stock Co.,* 56 Or. 283, 308 (106 Pac. 780, 108 Pac. 861); *Silverton* v. *Brown,* 63 Or. 418, 424 (128 Pac. 45); *State* v. *Warner Val. Stock Co.,* 68 Or. 466, 471 (137 Pac. 746). Had the legislature merely repealed Section 13 in 1903, the repeal would of itself have restored the common-law rule which had been suspended since 1862; *State ex rel. Goodman* v. *Halter,* 149 Ind. 292 (47 N. E. 665); but the common-law rule was first revived and then reinforced by an express legislative declaration that statutes of limitation shall not apply to actions brought in the name of the state or for its benefit. The history of Section 13 is helpful in ascertaining the legislative purpose concerning the statute of 1913. In 1862 the state adopted the policy of submitting itself to limitation statutes, but subsequently in 1903 the state concluded that a different policy would be better and accordingly declared that it would no longer submit itself to limitation statutes. Chapter 304, Laws 1913, does not contain any words expressly including the state nor does its language necessarily imply that the state is included. When viewed in the light of the previously declared policy of the state the act of 1913 is devoid of any suggestion whatever and much less a necessary implication that the state is included.

2. Although the state is not a party plaintiff *eo nomine,* nevertheless, if the suit is in truth for the benefit of

the state and if it is the real party in interest a statute of limitation will not operate against the common wealth. Even in the absence of a statute like Section 13, L. O. L., the court will examine the record and if it appears that the state is the real party in interest, a limitation statute which does not expressly or by necessary implication include the government will not be permitted to operate against the state: *State Bank* v. *Brown,* 2 Ill. 106; *Commonwealth* v. *Baldwin,* 1 Watts (Pa.), 54 (26 Am. Dec. 33); *Glover* v. *Wilson,* 6 Pa. St. 290; *Eastern State Hospital* v. *Graves Committee,* 105 Va. 151 (52 S. E. 837, 8 Ann. Cas. 701, 3 L. R. A. (N. S.) 746); *Black* v. *Chicago B. & Q. R. Co.,* 237 Ill. 500 (86 N. E. 1065); *People* v. *Kerber,* 152 Cal. 731 (125 Am. St. Rep. 93, 93 Pac. 878); *Sixth Dist. Agr. Assn.* v. *Wright,* 154 Cal. 119 (97 Pac. 144); *United States* v. *Beebe,* 127 U. S. 338 (32 L. Ed. 121, 8 Sup. Ct. Rep. 1083); *State ex rel. Goodman* v. *Halter,* 149 Ind. 292 (47 N. E. 665); *Hill* v. *Josselyn,* 13 S. & M. (Miss.) 597; *Wasteney* v. *Schott,* 58 Ohio St. 410 (51 N. E. 34).

Having determined that Chapter 304, Laws 1913, does not include the state and having concluded that if the state is the real party in interest the statute is not available to the defendants even though the state land board is the nominal plaintiff, we must now direct attention to the origin and functions of the state land board and to the history of the irreducible school fund in order to discover whether this suit is for the benefit of the state.

The act of Congress approved February 14, 1859, admitting Oregon to statehood offered to the common wealth sections 16 and 36 in every township of public lands in the state for the use of schools. Article VIII, Section 2 of the state Constitution provides that "the proceeds of all the land which have been, or hereafter

may be, granted to this state, for educational purposes
* * ; all the moneys and clear proceeds of all property
which may accrue to the state by escheat or for-
feiture''; and all moneys derived from other specified
sources

"shall be set apart as a separate and irreducible fund,
to be called the common school fund, the interest of
which, together with all other revenues derived from
the school land mentioned in this section, shall be ex-
clusively applied to the support and maintenance of
common schools in each school district, and the pur-
chase of suitable libraries and apparatus therefor."

Section 3 of the same article directs the legislature
to provide by law for the establishment of a uniform
and general system of common schools. Section 4 com-
mands that provision shall be made by law for the
distribution of the income of the common school fund
among the several counties of the state; and Section 5
so far as material here, reads thus:

"The governor, secretary of state, and state treas-
urer shall constitute a board of commissioners for the
sale of school * * lands, and for the investment of
funds arising therefrom; and their powers and duties
shall be such as may be prescribed by law * * ."

By the terms of Section 3882, L. O. L., the legis-
lature declared that the governor, secretary of state
and state treasurer "are hereby made a board of com-
missioners for the sale of state lands, and for the in-
vestment of funds arising therefrom, and shall be
styled the 'state land board.' " Section 3913, L. O. L.,
provides that the irreducible school fund of this state
shall be composed of moneys derived from specified
sources. The state land board is required by Section
3914, L. O. L., to loan all moneys belonging to the
irreducible school fund, and the board is commanded

to secure such loans by notes and mortgages "to the state land board on real estate in this state." Section 3926, L. O. L., makes it the duty of the state land board to foreclose all mortgages taken to secure loans from the school fund whenever more than one year's interest is due and unpaid.

By the terms of the Constitution the governor, secretary of state and state treasurer are made a board of commissioners for the sale of school lands and for the investment of the funds arising from such lands; and the powers and duties of the board "shall be such as may be prescribed by law." The legislature has given the board a name by calling it the State Land Board and, acting on the authority of the Constitution, has prescribed the powers and duties of the board. Every power conferred upon the board and every duty imposed upon it, whether conferred or imposed by the Constitution or legislative enactment, is for the direct benefit of the state. The state land board exists for the sole purpose of serving the state. Every attribute given to it and every function performed by it is for the benefit of the commonwealth. The state land board is the land department of the state. It is not an inferior board, but it is created by the Constitution and is a co-ordinate department of the state government: *Corpe* v. *Brooks,* 8 Or. 223, 225; *Robertson* v. *State Land Board,* 42 Or. 183, 187, 189 (70 Pac. 614); *Miller* v. *Wattier,* 44 Or. 347, 351 (75 Pac. 209); *Warner Val. Stock Co.* v. *Morrow,* 48 Or. 258, 262 (86 Pac. 369); *State* v. *Warner Val. Stock Co.,* 56 Or. 283, 303 (106 Pac. 780, 108 Pac. 861); *De Laittre* v. *Board of Commrs.,* 149 Fed. 800. Manifestly, the state land board is acting for the benefit of the state and the latter is the real party in interest.

The defendants proceed with their argument by contending that even though it is assumed that the state is the real party in interest, nevertheless when the state loans money it strips itself of the prerogatives attaching to sovereignty and acts in a purely proprietary capacity, subject to all the rules governing private parties. The defendants are relying upon precedents which do not apply to the instant case. If it be assumed that the state land board is a private corporation and that the state is a mere creditor of the board, then cases like *Calloway* v. *Cossart,* 45 Ark. 81, might be available to the defendants. Cases where the state is the real party in interest are widely different from those where the state is a mere creditor of a party who is both the nominal and real party to a legal proceeding: *Bank of United States* v. *Planters' Bank,* 9 Wheat. (U. S.) 904 (6 L. Ed. 244); *Bank of United States* v. *M'Kenzie,* 2 Fed. Cas. No. 927, p. 721, 2 Brock. 393. See, however, *Glover* v. *Wilson,* 6 Pa. St. 290; *State ex rel. Goodman* v. *Halter,* 149 Ind. 292 (47 N. E. 665), and Buswell on Limitations and Adverse Possession, 150. Again, if it be assumed that, prior to the time fixed by the note as the date of its maturity, the legislature had passed a statute shortening the period for the maturity of the note, or if a law had been enacted prescribing that the interest should be paid monthly instead of semi-annually as stipulated in the note, then the defendant might be able to rely upon adjudications like: *Davis* v. *Gray,* 16 Wall. (U. S.) 232 (21 L. Ed. 447); *Hall* v. *Wisconsin,* 103 U. S. 5 (26 L. Ed. 302); *Patton* v. *Gilmer,* 42 Ala. 548 (94 Am. Dec. 665); *Chapman* v. *State,* 104 Cal. 690 (38 Pac. 457, 43 Am. St. Rep. 158); *Carr* v. *State,* 127 Ind. 204 (22 Am. St. Rep. 624, 11 L. R. A. 370, 26 N. E. 778); *People* v. *Stephens,* 71 N. Y. 527; *Boston Molasses Co.* v.

*Commonwealth,* 193 Mass. 387, 390 (79 N. E. 827).

3, 4. The state, like a private person, is prohibited from impairing the obligation of a contract entered into by it. A pure limitation statute does not operate upon the contract itself and hence does not impair any obligation imposed by a contract; but a statute of limitation only affects the remedy and does not act upon the debt: *Anderson* v. *Baxter,* 4 Or. 105, 113; *Kaiser* v. *Idleman,* 57 Or. 224, 228 (28 L. R. A. (N. S.) 169, 108 Pac. 193); *Sturges* v. *Crowinshield,* 4 Wheat. (U. S.) 122 (4 L. Ed. 529); *Bronson* v. *Kinzie,* 1 How. (U. S.) 311 (11 L. Ed. 143); *Waltermire* v. *Westover,* 14 N. Y. 16; 6 R. C. L. 367. Cases where, independent of any statute of limitation, the equitable defense of laches has been recognized are also distinguishable from the questions arising out of Chapter 304, Laws 1913.

5. When the state loans money belonging to the irreducible school fund it does not act in a proprietary capacity stripped of the attributes of sovereignty; but, on the contrary, it is performing a duty enjoined upon it by law and is acting for the public. The state is expressly commanded by the Constitution to provide for the establishment of a uniform and general system of common schools; and, furthermore, the Constitution commands that the school funds derived from specified sources shall be irreducible and that the interest shall be applied exclusively to the support of the common schools. The state does not loan the money for a private purpose, but the moneys are loaned in order that revenue may be obtained to educate the children, upon whom in after years will largely depend the welfare and stability of the commonwealth. This is a public purpose of the highest type. The title to the funds is vested in the state in its sovereign capacity; the state is not a mere dry trustee, but it holds the

funds in trust for the common schools of the state, and hence in trust for a public purpose; and therefore Chapter 304, Laws 1913, cannot bar the foreclosure of mortgages given to secure moneys borrowed from the irreducible school fund: *State* v. *Chadwick,* 10 Or. 423, 428; *Lawrey* v. *Sterling,* 41 Or. 518, 531 (69 Pac. 460); *Alexander* v. *Knox,* Fed. Cas. No. 170, 6 Sawy. 54, 59; *Black* v. *Chicago B. & Q. R. Co.,* 237 Ill. 500, 505 (86 N. E. 1065); *United States* v. *Beebe,* 127 U. S. 338, 342 (32 L. Ed. 121, 8 Sup. Ct. Rep. 1083); *The State ex rel. Goodman* v. *Halter,* 149 Ind. 292, 297 (47 N. E. 665); *Hill* v. *Josselyn,* 13 S. & M. (Miss.) 597; *United States* v. *Nashville etc. Ry. Co.,* 118 U. S. 120 (30 L. Ed. 81, 6 Sup. Ct. Rep. 1006).

The plaintiff is entitled to the money judgment awarded by the trial court and also to a decree foreclosing the mortgage. The decree appealed from will be modified to conform to the conclusions herein expressed.                                    MODIFIED.