Argued March 10; affirmed May 11, 1943

# CITY OF SALEM *v.* MARION COUNTY ET AL.

(137 P. (2d) 977)

Before BAILEY, Chief Justice, and ROSSMAN, LUSK and BRAND, Associate Justices.

*C. E. Ross* and *W. C. Winslow,* both of Salem (Lawrence N. Brown, City Attorney, of Salem, on the brief) for appellant.

*Miller B. Hayden,* District Attorney, of Salem, and *James Smith,* of Salem, for respondents Marion County and A. C. Burk.

*Manley B. Strayer,* of Portland (Hart, Spencer, McCulloch & Rockwood, of Portland, on the brief) for respondent Peoples Water & Gas Co.

BAILEY, C. J.  The city of Salem brought this suit to enjoin Marion county and A. C. Burk as sheriff and tax collector thereof from selling the real and personal property comprising the city's water system, for delinquent taxes assessed and levied in 1935 and payable in 1936, and to obtain a declaration that such assessment and levy were invalid. The plaintiff also asked, by way of alternative relief in the event that the assessment be upheld, that a judgment be entered declaring that the defendant Peoples Water and Gas Company, a corporation, should pay the 1936 taxes on the above-mentioned water system.

The court held that the taxes were valid and con-
stituted a lien on the water system, but enjoined the
sale of that property for the taxes. It further decreed
that the defendant Peoples Water and Gas Company
was not liable for the payment of the taxes. From the
part of that decree unfavorable to it the plaintiff has
appealed. No cross-appeal is prosecuted by Marion
county or Burk as tax collector.

At the outset it is necessary to determine the date of
acquisition of the water system by the city of Salem.
If the city became the owner of that property prior to
June 12, 1935, the effective date of chapters 274 and
305, Oregon Laws 1935, such property, according to
the decision in *Portland v. Multnomah County,* 135 Or.
469, 296 P. 48, was exempt from taxation during the
year 1935, as the taxes for the year 1936 were not
assessed and levied until on or after October 28, 1935.
In the case cited, the city of Portland for corporate
purposes acquired title to property after March 1 but
before any levy of taxes was made for the year of pur-
chase. It was therein held that under the statute then,
and until the effective date of the enactments above
referred to, in force, "no valid and enforceable lien is
upon the land which passed to the city prior to the levy
of the tax." Subsequently to that decision the above-
noted chapters of Oregon Laws 1935 were enacted, and
it is contended by the defendants herein other than the
corporation that § 1 of chapter 274, *supra,* and § 9 of
chapter 305, *supra,* so amended the tax law as to render
the decision in that case no longer controlling. If, there-
fore, it be found that the city of Salem became the
owner of the water system prior to the effective date
of the two 1935 acts referred to, and the ruling in *Port-
land v. Multnomah County,* supra, be adhered to, it

will be unnecessary to consider the effect of those acts on the tax levy made in 1935.

The facts in connection with the city's acquisition of the water system are, briefly, the following: On January 9, 1934, the city of Salem filed a complaint in the circuit court of the state of Oregon for Marion county against Oregon-Washington Water Service Company, a corporation (the name of which was later changed to Peoples Water and Gas Company), to condemn the Salem water system owned and operated by that company. The case was removed by the defendant to the United States district court for the district of Oregon.

Thereafter, on May 6, 1935, the city of Salem passed a resolution in which it offered "to compromise and settle the condemnation suit" then pending in the United States district court, by paying the sum of $1,000,000 "as and for all damages, inclusive of costs and attorneys' fees, to be awarded the defendants" (the corporation and its trustees) in that proceeding, "upon acquisition by the city of Salem of the properties described in the complaint in" the condemnation action, "such payment to be subject to adjustment at the date of transfer of the properties on account of additions, betterments, improvements and retirements in and to said properties between September 27, 1934, and the date of the transfer". Payment of the purchase price by the city was "to be made in cash upon transfer of the properties on August 1, 1935, or at any earlier date which may be agreed upon" by the interested parties.

The resolution concluded with the following provision: ". . . the compromise and settlement to be carried out through stipulation to be entered into by counsel for the respective parties in the pending suit,

the city attorney and the special counsel for the city being hereby authorized to join in such stipulation on behalf of the city, upon acceptance of this offer by" the water company and its trustees. The offer of compromise and settlement was accepted by the water company and its trustees on or shortly after the day of the city council's passing the resolution embodying it.

In accordance with the provisions of the resolution a stipulation was entered into by the city of Salem and the water company and its trustees on June 21, 1935, in which it was provided that upon the trial of the condemnation proceedings the court "may make and enter its interlocutory judgment and decree ordering, adjudging and decreeing", among other things: (1) that the plaintiff "is authorized and entitled to take and condemn the properties described in" the complaint; (2) that the total amount of "compensation and damages of defendants" (the water company and its trustees) for acquisition of the water system "by the plaintiff on or before August 1, 1935, . . . is the sum of one million dollars ($1,000,000) . . . subject to adjustment"; (3) that upon the payment of the amount of compensation specified, on or before August 1, 1935, the plaintiff "shall be entitled to a final decree" condemning the properties of the water company to the use of the city of Salem; (4) that the amount of compensation and damages specified in the stipulation "shall not bear any interest, but that defendant Oregon-Washington Water Service Company shall be entitled to the possession and earnings and income of the properties until payment of all said compensation and damages; and (5) "that if the city shall not pay the compensation and damages for the properties described in subparagraph (a) above in the amounts provided above within a reasonable time after the entry of the

said interlocutory decree, which reasonable time, it is agreed, shall terminate on November 1, 1935, a final decree shall be entered in this action adjudging and decreeing that the plaintiff has not elected within a reasonable time to take and acquire the properties involved in this action and that the complaint of plaintiff and all proceedings herein be dismissed and that defendants retain the said properties and all their rights therein and all properties and rights involved in this action and recover their costs from the plaintiff.''

The above-mentioned stipulation was filed in the condemnation proceedings on June 22, 1935, and an interlocutory judgment was entered, based on that stipulation. No copy of the judgment is before us, but it is reasonable to assume that the judgment as entered contained provisions in accord with the stipulation.

Under date of August 1, 1935, the city of Salem and the water company and its trustees entered into a further stipulation, in which it was stated that the city had paid to one of the defendants in the condemnation proceedings, The Chase National Bank of the city of New York, as trustee, the full amount fixed by the interlocutory judgment as damages and compensation awarded to the water company and its trustees for the condemnation of the Salem water system; and that the city of Salem was entitled to a final judgment condemning such water system to its use. This stipulation was filed August 1, 1935, in the condemnation proceedings, and based thereon, as well as on the interlocutory judgment theretofore entered, a final judgment of condemnation was entered on that date. In the final judgment it was provided that the properties therein described ''be and the same are hereby condemned for public use, . . . by the city of Salem''.

A provision of the stipulation of June 21, 1935, was that at the time of entry of the final judgment of condemnation, the water company should execute and deliver to the city of Salem "a bill of sale of all the personal property and a bargain and sale deed of all real property included in the water system as described in the plaintiff's complaint" in the condemnation proceedings. In accordance therewith, the water company executed and delivered to the city of Salem a bill of sale and a bargain and sale deed, on August 1, 1935.

■ The first contention urged by the appellant is that the title to the water company's properties acquired by the city of Salem related back to the time of filing the complaint in the condemnation proceedings, to wit, January 9, 1934. No argument is made and no authorities are cited in support of that assertion.

Section 18 of article I of the Oregon constitution provides in part as follows: "Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered". And § 4 of article XI of the constitution thus reads: "No person's property shall be taken by any corporation, under authority of law, without compensation being first made or secured in such manner as may be prescribed by law." It is provided in § 12-408, O. C. L. A., that: "Upon the payment into court of the damages assessed by the jury, the court shall give judgment appropriating the lands, property, rights, easements, crossing or connection in question, as the case may be, to the corporation, *and thereafter the same shall be the property of such corporation.*" (Italics supplied.)

The city of Salem acquired no right or title to, or interest in, the water company's properties by force of the condemnation proceedings until August 1, 1935, on which date it paid to the water company and its trustees the amount awarded by the federal court in its interlocutory judgment as damages and compensation for taking those properties: *Oregonian Railway Company v. Hill,* 9 Or. 377; *Oregon R. & N. Co. v. Eastlack,* 54 Or. 196, 102 P. 1011, 20 Ann. Cas. 692; *State ex rel. v. Bradshaw,* 59 Or. 279, 117 P. 284; *Portland & O. C. Railway Company v. McGrath,* 88 Or. 346, 171 P. 1181.

Had the stipulation of June 21, 1935, not so provided, the city of Salem still could have elected, even after the entry of the interlocutory judgment, not to pay the amount of the award therein specified and take title to the water system: *Portland & O. C. Railway Company v. McGrath,* supra; *Oregonian Railway Company v. Hill,* supra.

■ It is asserted by the city that if the title which it acquired through the condemnation proceedings did not relate back to the inception of those proceedings, nevertheless it dated at least from May 6, 1935, when the resolution offering a compromise and settlement was adopted by the city and accepted by the water company. The appellant argues that on that date a contract was entered into by the city of Salem to purchase the water system for $1,000,000. We do not give that effect to the offer set forth in the resolution and accepted by the water company. The resolution did not bind the city to purchase the water system at the price named, or any other. The "compromise and settlement" therein mentioned were "to be carried out through stipulation to be entered into by counsel for the respective parties in the pending" action.

The resulting stipulation was entered into on June 21, 1935. It expressly provided that the city should have a reasonable time after the entry of the interlocutory judgment, to wit, until November 1, 1935, within which to pay the damages and compensation thereby awarded; and that failing such payment, the condemnation proceedings should be dismissed. The language of this stipulation is inconsistent with the contention of the city that on May 6, 1935, it agreed to purchase the water system.

In its reply brief the appellant asserts that it does not contend and has never contended "that legal title actually passed on May 6, 1935, the date of the contract between the city and the water company." It argues that "the title which actually did pass on August 1, 1935, related back to May 6, 1935, at least." In support of this proposition the appellant relies upon *Calvin v. Custer County,* 111 Mont. 162, 107 P. (2d) 134. The salient facts therein are the following: On April 28, 1938, Calvin granted to the United States an option to purchase certain lands in Custer county. On June 17 of that year, within the time provided in the contract, the United States exercised its option, entered into possession and made extensive improvements on the property, all of which occurred prior to the tax day, the first Monday in March, 1939. The government did not, however, make final payment until after its attorneys had examined the title to the land and found it marketable, which was done some time later. The county proceeded to assess the property for the year 1939 and made a levy of the assessment on the property. The taxes were paid under protest, and the action was brought by Calvin to recover the taxes so paid.

The court therein held that upon acceptance of the offer contained in the option the agreement became in

effect "a contract of sale and purchase". It further held that inasmuch as a binding contract had been made between the parties prior to the tax day, the assessment made in 1939 was invalid, for the reason that the title which the United States acquired upon payment of the purchase price related back to the date when it accepted the offer and went into possession of the property. That date was prior to the tax day.

The court also pointed out that *Jones v. Morse Bros. Lumber Co.*, 171 Ga. 753, 156 S. E. 587, relied upon by the defendants therein, was to be distinguished from the case then at bar, in that "there the vendors, and not the vendees, had the right to the possession of the land and to the use thereof during the period in question." Likewise, in the case before us, the vendor water company retained possession of the property until August 1, 1935, and prior thereto no "contract of sale and purchase" was consummated.

In our opinion the city of Salem acquired no right, title or interest in the water company's properties before August 1, 1935, either through the condemnation proceedings or otherwise. Up to that date the ownership, possession and beneficial use of the water system were in Oregon-Washington Water Service Company.

*Portland v. Multnomah County,* supra, was decided by this court on March 3, 1931. The statute in force at that time provided that taxes "assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid": § 69-722, Oregon Code 1930. As hereinabove stated, it was held in that case that the property therein involved, although acquired by the city of Portland after March 1st, was nevertheless exempt from taxation for the year in question

because the city became the owner of it before the taxes for that year were levied. The reason for the court's decision may be summarized in the following quotation from the opinion: "If it be said that the lien attached on March first, we answer that, when the property passed from private ownership to the city of Portland, all tax proceedings were, by reason thereof, arrested and any thereafter had were of no force and effect."

■ In 1935 § 69-101, Oregon Code 1930, was amended by § 1 of chapter 274, Oregon Laws 1935, to read in part as follows: "All real property within this state and all tangible personal property situated within this state, except as may otherwise be specifically provided by law, shall be subject to assessment and taxation in equal and ratable proportion. Property shall be assessed and taxed each year with respect to its status at the hour of 1 o'clock a. m. on March 1, which shall be the 'tax day' of such year. *Unless otherwise provided by law, any property subject to assessment for taxation on such tax day of any year shall remain taxable and taxes levied thereon in or of such year shall become due and payable, notwithstanding any subsequent transfer of said property to an exempt ownership or use, other than a transfer to the United States*". (Italics supplied.) During the same session of the legislature, § 69-722, Oregon Code 1930, was amended by § 9 of chapter 305, Oregon Laws 1935. The change thereby effected, as far as material here, was. thus worded: "Taxes on real property shall be a lien thereon from and including the tax day, the same being the first day of March, of the year in which they are levied until paid *and, except as otherwise specifically provided by law, such lien shall not be voided or impaired by any subsequent transfer of the ownership of said property.*" (Italics supplied.)

There was no law in force in 1935 after June 12, so far as we have been able to ascertain, which provided that the lien above referred to should be "voided or impaired" in the event of transfer of real property to a municipality after the tax day. Nor was there then any law which provided that property taxable on March 1, 1935, should not remain taxable during the year although transferred to an exempt ownership, except that of the United States.

It will be noted that in the case of *Portland v. Multnomah County,* supra, it is stated that under the law then in force tax proceedings were arrested on the transfer of real property to the city of Portland from private ownership after the tax day and before the tax levy was made. In the 1935 amendment of § 69-101, *supra,* the legislature expressly provided that any property subject to assessment and taxation on March 1 of any year should remain taxable, "notwithstanding any subsequent transfer of said property to an exempt ownership or use, other than a transfer to the United States." In other words, the legislature has said that tax proceedings shall not be arrested upon a transfer of property such as had occurred in the case of *Portland v. Multnomah County,* supra.

The opinion in that case stated that: "If, after the assessor had made a valuation of the property as of March first, no other steps had been taken in the tax proceedings provided by statute, no lien would have attached". After that decision was rendered, the legislature by its amendment of § 69-101, *supra,* not only prescribed that tax proceedings should not be arrested, but expressly provided by the amendment of § 69-722, *supra,* that the lien attaching on the tax day should not be "voided or impaired by any subsequent transfer of

the ownership of'' real property. There can be no doubt that the legislative intention was to prevent both real and personal property taxable on March 1 of any year from thereafter being exempted from taxation for that year, regardless of any transfer of such property except to the United States. The purpose sought to be accomplished by the legislature is clearly expressed and we must give effect to it.

■ It is argued by the appellant herein that a construction of the 1935 enactments which would subject the Salem water system to the taxes assessed and levied in 1935 "would impair the obligation of the contract made between the city and the water company as of May 6, 1935''. This contention is based on the premise that the city entered into a contract with the water company on that date to purchase the property in question. Without expressing any opinion as to whether the property would have been exempted from taxes levied in 1935, had a binding contract of purchase then been consummated, the fact remains, as above noted, that no such contract was made on May 6, 1935.

The case of *Colby v. Medford*, 85 Or. 485, 167 P. 487, relied upon by the appellant in support of its contention, has no bearing at all upon the facts of the controversy before us. The court therein held that after a property owner had complied with the provisions of the Bancroft bonding act for the payment of local improvement assessments levied against his property, an amendment of the city charter "changing the number and amount of installments and the time of payment" impaired the obligation of the contract between the property owner and the city.

The appellant claims that the 1935 amendments did not and could not apply to the taxes assessed as of

March 1, 1935, which were payable in the year 1936. In this connection it is pointed out that the tax day in 1935 was March 1, and that the law applicable to taxation on that date "was that if property assessed to the private owner on March first of that year should thereafter, during the year, and prior to the actual levy of taxes, pass to an exempt use, . . . the proceedings for the levy and collection of the tax would be thereby arrested." The same thought is otherwise stated by the appellant as follows: "On that date [March 1, 1935] the status of the Salem water plant properties became fixed as to taxability and rights to exemption."

To hold that the property was taxable in 1935 would, the appellant argues, give retrospective effect to the 1935 amendments and would impair the vested rights which the city acquired in the property by virtue of the contract of May 6, 1935. Had the city of Salem become the owner of this property after March 1 and prior to June 12, 1935, when the amendments became effective, such amendments could not be given a retroactive construction so as to subject the property to taxation for that year. But the city did not, as we have seen, acquire any right or interest in the water system until August 1, 1935.

On March 1, 1935, the Salem water system was subject to taxation and nothing was done in regard to it which exempted it, prior to June 12, 1935, from taxation for that year. The effect of the 1935 amendments was to prevent such property from thereafter during that year escaping taxation by a transfer to public ownership. To construe § 1 of chapter 274, *supra,* and § 9 of chapter 305, *supra,* as applying to all transfers of property from non-exempt to exempt ownership after the effective date of such amendments is to give those acts prospective and not retrospective force.

The transfer of the Salem water system from private to public ownership occurred, as hereinabove stated, on August 1, and was accordingly governed by the law then in effect. That law did not admit immunity of the water system properties from taxation for 1935 on account of their passing into exempt ownership before the date of the levy.

■ The assessment of the water system was made by the state tax commission, which was charged with the duty of assessing public utility corporations by § 69-404, Oregon Code 1930 (now, as amended, § 110-505, O. C. L. A.). On May 7, 1935, Oregon-Washington Water Service Company submitted to the commission its annual report, in compliance with § 69-408, Oregon Code 1930 (now, as amended, § 110-510, O. C. L. A.), in which was set forth the information required by the commission to enable it to make the proper assessment.

Prior to the third Monday in September, 1935, in accordance with § 3 of chapter 446, Oregon Laws 1933 (§69-410, Oregon Code 1935 Supplement; § 110-512, O. C. L. A.), the commission prepared an assessment roll upon which to assess public utility properties at their "true cash value, as of the first day of March at the hour of one o'clock a. m.," of that year, and thereafter gave public notice, pursuant to § 4 of chapter 446, *supra,* (§ 69-415, Oregon Code 1935 Supplement; § 110-517, O. C. L. A.), that it would on the third Monday in September "examine the assessment roll by it made, and review the same, and correct all errors in valuation, description, quantities or qualities by it assessable and in apportionments of assessments made by it".

On the third Monday in September, 1935, the commission met at the state capitol as required by § 5 of chapter 446, *supra* (§ 69-416, Oregon Code 1935 Supplement; § 110-518, O. C. L. A.), to review, examine

and correct the assessment roll covering public utility and other properties, in accordance with § 69-417, Oregon Code 1930 (§ 110-519, O. C. L. A.). Thereafter the commission completed the assessment and certified to the counties concerned the values of properties assessed by it, as required by § 69-423, Oregon Code 1930 (§ 110-525, O. C. L. A.). The property of the Salem water system was assessed by the commission to Oregon-Washington Water Service Company as owner and was described as "water system—Salem" as well as in the language of the act contained in § 69-406, Oregon Code 1930 (now § 110-543, O. C. L. A.). The commission fixed the true cash value of the water system at $990,-000, and the value thereof for assessment at $504,900.

The term "property" as used in connection with public utility corporations is defined by § 69-406, *supra* (§ 110-543, O. C. L. A.), "to include all property, real and personal, tangible and intangible, subject to assessment for taxation", with situs in this state. The law does not contemplate segregation of the real and personal property of public utility corporations and a separate assessment of each class: § 69-406, *supra* (§ 110-543, O. C. L. A.); § 69-411, Oregon Code 1930 (§ 110-513, O. C. L. A.); § 69-410, Oregon Code 1935 Supplement (§ 110-512, O. C. L. A.).

Section 69-412, Oregon Code 1930 (now § 110-514, O. C. L. A.), specifies that the commission shall place upon the assessment roll after the name of each of the companies assessed, "a general description of the properties of said companies, which shall be deemed to include all of the properties of the said companies liable to assessment for taxation under this act". The section further provides that the description may be in the language of the act as contained in § 69-406, *supra* (§ 110-543, O. C. L. A.), or otherwise; and that

when the name of the true owner is given, "such assessment shall not be held invalid on account of any error or irregularity in the description, provided such description would be sufficient in a deed or conveyance from the owner, or on account of which in a contract to convey, a court of equity would decree a conveyance to be made, reading the said description in connection with the definition of property assessable under the provisions of this act."

Neither the water company nor the city of Salem is shown to have appeared before the commission at the time fixed by law for examining and reviewing the assessment roll made by the commission, to object in any respect to the assessment of the water system tentatively made. Nor was any appeal from the assessment as finally adjusted and approved by the commission taken to the circuit court by either the city or the water company. Both appeared to be satisfied with the action of the commission.

After the assessment as finally determined by the commission was certified to the county assessor, the latter entered it upon the assessment roll of Marion county, pursuant to § 69-423, *supra*. The property of the utility corporation was described by the assessor as follows: "Salem water plant, described in volume 221, page 605, of the records of deeds for Marion county, Oregon." The record page to which the assessor referred contained a copy of the judgment of appropriation entered by the United States district court for the district of Oregon in the condemnation proceedings.

In certifying to the assessor of Marion county its assessment of public utility properties, the state tax commission transmitted to him a copy of the assessment roll prepared by it. This certified copy of the tax commission's assessment roll became a part of the records

of the assessor of Marion county. For that reason it was unnecessary for the assessor to describe the property in his records in any greater detail than as the water system of Oregon-Washington Water Service Company. Any deficiency in his notation would have been supplied by the commission's assessment roll, and he should not have attempted to limit or enlarge upon the description therein contained. His reference to the book and page of Marion county deed records showing the condemnation judgment was mere surplusage and should be disregarded.

The property of the water company assessed by the commission was the property which was owned by the company on March 1, 1935, at one o'clock a. m. That property was, as above noted, assessed as a unit comprising both realty and personalty. The assessment when levied became a lien on the water system, not on any particular part but on the whole property. We are not here concerned with whether the city of Salem acquired in the condemnation proceedings all the property owned by the water company on March 1, 1935, upon which the levy was made. The property which it did acquire, owned by the water company on March 1, 1935, is burdened with the lien of the entire assessment made in 1935.

In our opinion, the assessment made by the tax commission of the water system of Oregon-Washington Water Service Company was regular; the description of the system was sufficient; and the levy made on the assessment is a lien on the properties constituting the Salem water system.

■ The defendants in this proceeding admitted in the circuit court that inasmuch as the properties comprising the water system are devoted to a public use, they can not be sold in a proceeding for the foreclosure

of delinquent taxes. The fact that such properties can not be sold, however, does not invalidate the assessment or the lien. A similar question arose in the case of *United States v. Alabama,* 313 U. S. 274, 85 L. E. 1327, 61 S. Ct. 1011. It appears from the facts therein that the United States acquired some real property in the state of Alabama after the tax day but before the levy for taxes had been made. It was urged that because the property could not be sold for taxes the lien should be deemed invalid as against the United States. The court, through Mr. Chief Justices Hughes, answered that contention as follows:

"Our present inquiry is whether, assuming the validity of the state statute creating a lien as of October 1, 1936, as against other subsequent purchasers, it should be deemed invalid as against the United States. The question is not whether such a lien could be enforced against the United States. The fact that the United States had taken title and that proceedings could not be taken against the United States without its consent would protect it from such enforcement. But that immunity would not be predicated upon the invalidity of the lien. If in this instance title had been taken by the United States in the summer of 1937 after the amount of the taxes had been ascertained and the respective liens were concededly valid, still proceedings against the United States could not be prosecuted without its consent.

"The government is not content with that measure of protection. The government brings this suit in the view that it is entitled to have a marketable title and it seeks to remove the liens in question as clouds upon that title which would interfere with the disposition of the lands in the future. From that standpoint the government asks a decree declaring the invalidity of the liens and enjoining the state from asserting any claim in the lands either

adverse to the United States or to its successors in title. We think that the United States is not entitled to that relief. The United States took the conveyances with knowledge of the state law fixing the lien as of October 1st.''

■■ There remains for consideration the question of whether taxes assessed against the Salem water system should be paid by the city of Salem or the defendant Peoples Water and Gas Company (formerly Oregon-Washington Water Service Company). The city contends that the taxes, if valid, should be paid by the company, and directs our attention to § 110-839, O. C. L. A., which makes a tax on personal property ''a debt due and owing from the owner of said personal property''. That section, in our opinion, has reference to personal property assessed as such, and does not apply to properties of a public utility corporation, comprising both realty and personalty and assessed as a unit. This is the construction which the legislature has placed upon § 110-839, *supra*, by the enactment of chapter 12, Oregon Laws 1941, wherein it is specifically provided that, ''All taxes assessed and levied against the properties, both real and personal, of companies specified [public utilities] in paragraph 14, section 110-505, O. C. L. A., shall be a debt due and owing from such companies.'' The chapter last quoted was not in effect at the time of the transfer of the property here involved and can therefore have no direct application to the question here under consideration.

■ An assessment for tax purposes does not create a personal debt except as declared by statute: *Marion County v. Woodburn Mercantile Co.,* 60 Or. 367, 119 P. 487, 41 L. R. A. (N. S.) 730. There was no law in force

in 1935 making the taxes assessed and levied in that year against the property of a public utility company a debt due and owing from that company.

The appellant calls attention to the fact that the water company and not the city filed with the tax commission the annual statement which formed the basis of the 1935 assessment; and to the further fact that the water company specifically agreed to pay the third and fourth installments of the 1935 taxes. Its argument thereon based is that the company and not the city should be charged with payment of the 1936 taxes. In filing the annual statement, it may be pointed out, the water company was doing only what the law required it to do on or before May 15, 1935, as owner of the water system at that time.

■ When the stipulation of June 21, 1935, was entered into there was considerable discussion between the city and the water company as to which should pay the third and fourth installments of the 1935 taxes (levied in 1934), and it was finally agreed that they should be paid by the water company. Nothing was said about the 1936 taxes, assessed and levied in 1935, for the reason that both the city and the water company relied upon and were guided by the decision in *Portland v. Multnomah County,* supra, and apparently overlooked the 1935 amendment of the statute on which that decision was based. We find nothing in the agreement or the negotiations between the city and the water company which would in any way indicate that the water company was obligated to pay the taxes levied in 1935. Those taxes became a lien on the water system, but not a personal liability of the owner of that property.

The decree appealed from is affirmed. No costs will be allowed in this court.