Argued October 7, 1968, affirmed February 19, petition for rehearing denied March 11, 1969

CHIZEK ET UX, *Appellants, v.* PORT OF NEWPORT, *Respondent.*

450 P. 2d 749

*William B. Wyllie,* Salem, argued the cause for appellants. With him on the briefs were Rhoten, Rhoten & Speerstra, Salem.

*Howard M. Feuerstein,* Portland, argued the cause for respondent. With him on the brief were Davies, Biggs, Strayer, Stoel & Boley, Portland, and Adams & DeSelms and Herbert R. DeSelms, Lincoln City.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and MENGLER, Justices.

DENECKE, J.

Plaintiffs appeal from a decree which quieted defendant's claim of title to a lot located in the tidelands of Yaquina Bay.

The case has some difficult problems involving the law applicable to tidelands and real property generally which we finally have determined need not be answered in deciding this appeal.

The defendant Port claims title through a conveyance from the county. Subsequently one Sargeant

delivered a conveyance of the lot to the Port in 1954. Sargeant had not paid some of the real property taxes assessed against the property. Through an error the county continued to assess taxes against the property after it was owned by the Port and these taxes also were not paid. The county foreclosed for all of these delinquent taxes, the sheriff conveyed to the county, and the county sold to the plaintiffs. They received a conveyance in 1963.

■ We hold that the foreclosure proceeding against the Port was invalid and the Port could collaterally attack the foreclosure proceeding in this suit. For these reasons the plaintiffs do not have good title.

■ Taxes could not validly be levied against the parcel when it was property of the Port because the Port is tax exempt. ORS 307.090. The taxes levied against the Port's grantor, Sargeant, remained a lien against the property after the conveyance to the Port; however, we hold that the county could not sell the property to satisfy its tax lien.

In *City of Salem v. Marion County,* 171 Or 254, 137 P2d 977 (1943), we did not decide this point because, "The defendants in this proceeding admitted in the circuit court that inasmuch as the properties comprising the water system are devoted to a public use, they can not be sold in a proceeding for the foreclosure of delinquent taxes. * * *." 171 Or at 272-273.

Most of the decisions considering this question have held that public land held by any type of governmental body cannot be sold for taxes owing to another governmental body. See cases collected in Annotation, 158 ALR 563 (1945).

*State v. Locke,* 29 NM 148, 219 P 790, 30 ALR 407 (1923), states the reasons for this rule:

"* * * The exemption granted * * * to

the state, all counties, towns, cities, and school districts arises from public policy, which repudiates, as being utterly futile, the theory of the state taxing its own property in order to produce the funds with which to operate its own affairs. To tax it would merely require and render it necessary to levy new taxes to meet the demand of those already laid; that the public would thus be taxing itself to produce the money with which to pay itself the taxes previously assessed, thereby benefiting no one except the officers employed to collect and disburse such revenues, whose compensation would merely serve to increase the burden of this useless and idle ceremony. The object of taxing property is to produce the revenues with which to conduct the business of the state; it is entirely inconsistent with our theory of government for the property of the state to be taxed, or sold for taxes, in order to produce the money to be expended by the state. Such a procedure is but taking the money out of one pocket and putting it in the other. Another consideration, which should not be overlooked, is that if public property, that is to say, property owned by the state, is to be burdened with a tax lien, the public might lose it entirely through oversight or carelessness of its agents in failing to pay the taxes when due, and allowing the same to be sold and the title pass to third parties.

"And we think these unanswerable reasons for exempting the property of the state from the levy of taxes thereon lead to the conclusion that when property is acquired by the state in its sovereign capacity, it thereupon becomes absolved, freed, and relieved from any further liability for taxes previously assessed against it, and which are unpaid at the time it becomes so acquired; that, from the moment of its acquisition, the power to enforce the lien is arrested or abated. The claim of the state for such taxes becomes merged in its ownership of the fee. To consider it further burdened with such lien, and to permit it to be subsequently sold for the payment thereof, results in the state selling

its own property to pay itself. * * *." 29 NM at 155-156.

The plaintiffs contend that the defendant is barred by the statute of limitations and by conduct amounting to estoppel and laches from collaterally attacking the validity of the tax foreclosure proceeding.

Two statutes must be considered: ORS 312.220 provides:

"Any judgment and decree for the sale of real property to the county, on foreclosure for delinquent taxes, is conclusive evidence of its regularity and validity in all collateral proceedings, except where the taxes have been paid or the property was not liable to assessment and taxation. The judgment and decree is prima facie evidence that the taxes have not been paid and that the property was subject to taxation at the time it was assessed. The judgment and decree shall estop all persons raising objections thereto, or to the title based thereon, which existed at or before the date of the judgment and decree and could have been presented as an objection or defense to the application for the judgment and decree."

ORS 312.230(1) and (3) provides:

"(1) Every action, suit or proceeding, commenced for the purpose of determining the validity of a sale of real property on foreclosure for delinquent taxes, or to quiet title against such sale, or to remove the cloud thereof, or to recover possession of the property, shall be commenced within two years from the date of the judgment and decree of foreclosure and sale to the county, or within six months from June 1, 1961, whichever is the later.

"* * * * *

"(3) For all purposes this section shall be construed as a statute of prescription as well as a statute of limitation."

■ It is to be noted that the first statute quoted, ORS 312.220, excepts from its provisions, "except where * * * the property was not liable to assessment and taxation." This is the present situation with respect to the taxes levied after the Port had title,—the property was not liable to assessment and taxation because it was exempt. The second statute, the statute of limitation, ORS 312.230, however, does not have this exception.

We interpret these statutes as follows: If a collateral attack is made upon a tax foreclosure within two years from the decree of foreclosure, the foreclosure decree is conclusive except where the taxes have been paid or the property was not liable to assessment and taxation. If the collateral attack is commenced more than two years after the foreclosure decree, the attacker is barred although his basis for attack is that the property was not liable to assessment and taxation. Therefore, if the statute of limitation is applicable to the plaintiff Port, it is barred from attacking the foreclosure proceeding.

The Port contends the statute of limitation was not intended to be applicable to public bodies.

The Port makes several arguments, based upon various words and phrases in the statutes, to the effect that the statutes are not applicable to governmental subdivisions or municipal corporations. We do not find that the language of the statutes is determinative. ORS 312.250 may indicate that these statutes are applicable to municipal corporations; however, we also do not find that inference compelling.[1]

---

[1] ORS 312.250 provides: "No provision of ORS 312.010 to 312.240 [this includes the two-year statute of limitation and the 'conclusive evidence of regularity' statutes] shall impair or annul a right conferred upon municipal corporations by ORS 311.520

██ A policy of the state, as expressed by the legislature, is to give tax foreclosure titles the "utmost stability."②

In *Hood River County v. Dabney*, 246 Or 14, 423 P2d 954 (1967), we reviewed the above statutes and our past decisions and held:

"❋ ❋ ❋ Upon a reconsideration of the question we are now of the opinion that when land has been sold for taxes the legislature has the constitutional power to cut off the interest of the delinquent owner, even though the decree of foreclosure is void for lack of jurisdiction if the owner is given a reasonable time within which to attack the void decree." 246 Or at 27.

The other general policy which must be considered was stated in *State Land Board v. Lee*, 84 Or 431, 165 P 372 (1917): "❋ ❋ ❋ [I]t is a rule of universal recognition that the government is not included in a general statute of limitation unless it is expressly or by necessary implication included." 84 Or at 434. The

---

or ORS 312.270 to 312.300. [These generally preserve temporarily the municipality's lien for local improvement costs on property which has been foreclosed by the county for unpaid taxes.]"

② ORS 312.214: "(1) Notwithstanding any other provisions of law, and for all purposes of ORS 312.214 to 312.230, it is hereby declared to have been and to be the public policy of this state that when a county has acquired or hereafter acquires real property by foreclosure for delinquent taxes, its title to such property shall have the utmost stability; and that once real property has become or hereafter shall become subject to foreclosure for taxes, there has been imposed and there hereafter shall be imposed upon all persons owning or claiming to own, or having or claiming to have, any interest in such real property, by reason of their delinquency, a continuing duty to investigate and ascertain whether such real property did become or hereafter shall become included in tax foreclosure proceedings, regardless of any defects, jurisdictional or otherwise, that may have appeared or shall hereafter appear in such foreclosure proceedings.

"❋ ❋ ❋ ❋ ❋."

reason for the principle was stated in the same case to be, "as a matter of public policy it is necessary to preserve public rights, revenues and property from injury and loss by the negligence of public officers: * * *." 84 Or at 434.

The legislature adopted this general policy. ORS 12.250:

"Unless otherwise made applicable thereto, the limitations prescribed in this chapter shall not apply to actions brought in the name of the state, or any county, or other public corporation therein, or for its benefit."

This statute is not specifically applicable because the statute of limitation here in question is not in the chapter referred to in ORS 12.250.

Recently, in *Corvallis Sand & Gravel Co. v. State Land Board*, 250 Or 319, 439 P2d 575 (1967), we applied this general policy and refused to permit the defense of laches to be raised against the state. We so held although the private party seeking to establish title by adverse possession against the state had been in possesion of the property for over 40 years.

The basic reason for the policy of giving stability to tax titles is to give an assist to the public treasury by enabling the government to sell the foreclosed property at reasonable prices. In *Hood River County v. Dabney,* supra (246 Or at 22), we observed that our previous decisions striking down tax foreclosure proceedings "treat the statutes as expressing a legislative intent to favor the interest of the taxpayer rather than the interest of the county and the interest of the purchaser at the tax foreclosure sale." In *Hood River County v. Dabney,* supra (246 Or 14), we overruled our previous decisions; therefore, we must necessarily

have found the legislative intent favored the county and the purchaser of the property rather than the taxpayer. The only conceivable reason to favor the purchaser over another private individual, the taxpayer, would be for the ultimate benefit of the county. As we noted in *Hood River County v. Dabney,* supra (246 Or at 29), if tax titles are insecure, the price offered by purchasers is very low; so the ultimate loser is the public who pays the taxes.

When the property of one division of government is lost to another division of government and then sold to a private party, the public is not served. The only party who gains is the purchaser at the foreclosure and there is no policy reason to prefer him over a public body.

■ We hold that the Port, as a public body, is not barred by the statute of limitation and the tax foreclosure proceeding is invalid and, therefore, the plaintiffs secured no title to the disputed property.

Plaintiffs contend that title to the property was gained by adverse possession between 1939 and 1954. They concede that adverse possession will not operate against a public body; however, they contend that during the period during which the adverse possession occurred the land was owned by the Southern Pacific. The sheriff's foreclosure deeds of 1922 and 1923 effectively conveyed title to this property to the county and it was the owner during the period of the claimed adverse possession. The conveyances by the Southern Pacific to the Port in the 1960's were only to remove a possible cloud on the title.

Affirmed.