Argued and submitted January 11, reversed as to dismissal of negligence claim; otherwise affirmed May 18, Mobile Chemical's reconsideration denied July 22, American Brass & Iron Foundry's reconsideration and Orangeburg Manufacturing Co.'s reconsideration denied August 12, all petitions for review denied September 29, 1988

(306 Or 661)

# CITY OF MEDFORD,
acting by and through its
Medford Water Commission,
*Appellant,*

*v.*

## BUDGE-McHUGH SUPPLY COMPANY et al,
*Intervenors,*

## HINDS SUPPLY COMPANY et al,
*Defendants,*

## AMERICAN BRASS AND IRON FOUNDRY,
*Respondent.*

(86-3066-J-1; CA A44044)

754 P2d 607

W. V. Deatherage, Medford, argued the cause for appellant. With him on the brief were Larry B. Workman and Frohnmayer, Deatherage, deSchweinitz, Pratt & Jamieson, Medford.

Denise G. Fjordbeck, Eugene, argued the cause for respondent. With her on the brief were William G. Wheatley and Jaqua, Wheatley, Gallagher & Holland, Eugene.

Mildred J. Carmack, Portland, argued the cause for intervenors Orangeburg Manufacturing Company and Wesflex Manufacturing Company. With her on the brief were W. A. Jerry North and Schwabe, Williamson & Wyatt, Portland.

Thomas M. Christ, Portland, argued the cause for intervenor Consolidated Supply Company. With him on the brief was Mitchell, Lang & Smith.

Donald E. Johnson, Ralph F. Cobb and Luvaas, Cobb, Richards & Fraser, Eugene, filed a brief for intervenor The Clow Corporation.

H. Scott Plouse, Medford, filed a brief for intervenor Budge-McHugh Supply Company.

William E. Duhaime, Brophy, Wilson & Duhaime, Daniel A. Hyde, Vinson & Elkins, Clark E. Walter, Dewey, Ballantine, Bushby, Palmer & Wood, John V. Baus and Jones, Walter, Waechter, Poitevent, Carrere & Denegre, Medford, filed a brief for intervenors Mobil Chemical Company, Witco Corporation, Shell Oil Company and Shell Chemical Company.

Henry Kantor and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, filed a brief *amicus curiae* for Multnomah County School District No. 1J.

Before Warden, Presiding Judge, and Van Hoomissen and Rossman, Judges.

WARDEN, P. J.

### WARDEN, P. J.

In this product liability action, City of Medford, appeals from the trial court's dismissal of its complaint against American Brass and Iron Foundry (defendant).[1] It assigns error to the trial court's holdings that its negligence and strict liability claims were time barred under ORS 30.905 and that it failed to state ultimate facts sufficient to constitute a claim for strict liability. We address the assignments in the order presented.

Plaintiff's claims stem from its 1972 purchase of polybutylene pipe used in its underground water system. The complaint was filed in 1986. Plaintiff concedes that its action was not commenced within the statute of ultimate repose of ORS 30.905, applicable to product liability actions:

"(1) Notwithstanding ORS 12.115 or 12.140 and except as provided in subsection (2) of this section and ORS 30.907, a product liability civil action shall be commenced not later than eight years after the date on which the product was first purchased for use or consumption.

"(2) Except as provided in ORS 30.907, a product liability civil action shall be commenced not later than two years after the date on which the death, injury or damage complained of occurs."

Plaintiff argues, however, that, because it is a public corporation, it is exempt from the limitations under "a rule of universal recognition that the government is not included in a general statute of limitations unless it is expressly, or by necessary implication, included." *State Land Board v. Lee,* 84 Or 431, 434, 165 P 372 (1917). The rule has been justified as supporting the public policy of preserving public rights, revenues and property from injury and loss by the negligence of public officers. *State Land Board v. Lee, supra,* 84 Or at 434. It is now codified as ORS 12.250:

"Unless otherwise made applicable thereto, *the limitations prescribed in this chapter shall not apply* to actions brought in the name of the state, or any county, or other public corporation therein, or for its benefit." (Emphasis supplied.)

---

[1] Plaintiff brought this action against several defendants, alleging claims for breach of warranty, negligence and strict liability. Only negligence and strict liability claims were alleged against American Brass and Iron Foundry, which were disposed of in an ORCP 67B judgment, and it is the only respondent on appeal.

Defendant contends that by its own terms, ORS 12.250 applies only to limitations in chapter 12 and that it does not apply to this action, brought under chapter 30.

The effect of statutory enactments on the general rule urged by plaintiff was exhaustively discussed in *State Land Board v. Lee, supra.* Before 1862, the rule exempting governments from statutes of limitations unless the government was expressly, or by necessary implication, included was part of Oregon's common law. In 1862, the legislature, seeking to avoid the common law rule adopted a statute:

> "The limitations prescribed in this title *shall apply* to actions brought in the name of the state, any county or other public corporation therein, or for its benefit, in the same manner as to actions by private parties." General Laws of Oregon, ch 1, § 13, p 142 (Deady 1845-1864). (Emphasis supplied.)

The statute remained unchanged until 1903, when the legislature amended it to provide:

> "The limitations prescribed in this title *shall not apply* to actions brought in the name of the state, or any county, or other public corporation therein, or for its benefit * * *." Lord's Oregon Laws § 13. (Emphasis supplied.)

As the Supreme Court explained in *State Land Board v. Lee, supra:*

> "From 1862 until 1903, statutes of limitation applied to the state and private persons alike, for the sole reason that the state acting through its legislature had expressly consented that limitation statutes be made applicable to the commonwealth.
>
> "That the legislature recognized the existence of the common-law rule exempting the government is conclusively proved by the passage of the act of 1862, because if the common-law rule did not at that time prevail in this jurisdiction, then the enactment of the statute of 1862, so far as made applicable to the state, was a work of supererogation; and, moreover, whenever the courts applied the bar of a statute of limitation to an action prosecuted by the state they did so only because the limitation statute had been made applicable to the state by an express legislative enactment * * *. Had the legislature merely repealed Section 13 in 1903, the repeal would of itself have restored the common-law rule which had been suspended since 1862; * * * *but the common-law rule was first*

*revived and then reinforced by an express legislative declaration that statutes of limitation shall not apply to actions brought in the name of the state or for its benefit.* The history of Section 13 is helpful in ascertaining the legislative purpose concerning the statute of 1913. In 1862 the state adopted the policy of submitting itself to limitation statutes, but subsequently in 1903 the state concluded that a different policy would be better and accordingly declared that it would no longer submit itself to limitation statutes." 84 Or at 435. (Emphasis supplied.)

The court concluded:

"Even in the absence of a statute like Section 13, L. O. L., the court will examine the record and if it appears that the state is the real party in interest, a limitation statute which does not expressly or by necessary implication include the government will not be permitted to operate against the state * * *." 84 Or at 437.

The 1903 amendment remained Oregon law without significant change through several recodifications. *See* Lord's Oregon Laws § 13; Oregon Code 1930 § 1-211; OCLA § 1-211. The phrase "Unless otherwise made applicable thereto," now in ORS 12.250, was added to OCLA § 1-211 as part of the 1953 general recodification of Oregon statutes

"because of the effect of the amendment of 1903 and in view of the language of ORS 12.100, 12.110 and 12.130.

"* * * * *

"The clause added incorporates the holding of *State Land Board v. Lee* * * *." *Reviser's Notes and Annotations to Chapters 1 to 170 of the Oregon Revised Statutes* 72 (1953).

The legislature's awareness of the *State Land Board v. Lee* holding is of great importance, as is the fact that it has since done nothing to change the rule or its application for more than 70 years.

We find nothing of controlling significance in the specific applicability of ORS 12.250 to "limitations prescribed *in this chapter."* (Emphasis supplied.) The 1903 amendment at issue in *State Land Board* applied to "limitations prescribed *in this title."* (Emphasis supplied.) Yet the clause had no effect on the court's holding that the amendment constituted a revival of the common law rule. The change from "title" to

"chapter" was simply a result of the general 1953 recodification. Moreover, in a post-1953 case, *Chizek v. Port of Newport,* 252 Or 570, 450 P2d 749 (1969), the Statute of Limitation sought to be imposed against the port, a public body, was found in ORS chapter 312, even though ORS 12.250 was in chapter 12. The court held that ORS 12.250 was "not specifically applicable because the statute of limitations here in question is not in the chapter referred to in ORS 12.250." 252 Or at 577. Nevertheless, the court cited *State Land Board v. Lee, supra,* and applied the common law rule to protect the sovereign.

The common law rule that statutes of limitations do not apply against government bodies unless they are included expressly or by necessary implication is still in force. ORS 12.250 is simply a revival of that rule after its abrogation between 1862 and 1903. We conclude that, because ORS 30.905 does not expressly or by necessary implication include any sovereign bodies within its purview, the limitation found there does not apply against the City of Medford on either its negligence or its strict liability claims. The trial court erred in holding to the contrary.

Plaintiff next contends that the trial court erred in holding that its complaint failed to state a claim for strict liability. ORS 30.920(1) provides:

"One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm or damage to property caused by that condition * * *."

Plaintiff's complaint alleges that it sustained economic and property damage from defective polybutylene pipe used as an underground connecting material in the city's water system. Specifically, the complaint alleges that, when purchased, the pipe was:

"Subject to failure in the nature of cracking, splitting, shearing and pinholing, the pipe is not durable and prematurely deteriorates and decays, and it is wholly unsatisfactory for use in a municipal waterworks system * * *.

"Dangerously defective due to some mishap in the manufacturing, testing, inspection or marketing processes or * * * the product design was defective or * * * defendant sellers

failed to adequately warn of risks or to provide adequate warnings or instructions regarding the installation and use of the * * * pipe.

"* * * * *

"The polybutylene pipe * * * was dangerous to an extent beyond which was contemplated by the Commission and the nature of the defective pipe was so harmful to persons or property that a reasonably prudent seller would not have placed it on the market."

The trial court ruled:

"This court does not believe that the concept of 'dangerous' can be extended to the type of injury complained of here and, accordingly, all motions seeking to strike the counts based on strict liability are allowed."

Plaintiff relies on *Russell v. Ford Motor Company,* 281 Or 587, 575 P2d 1383 (1978), in which the plaintiff sought recovery in strict liability for damages to his truck resulting from a defective weld in an axle housing which caused him to lose control of the vehicle and hit a rock pile. The court held that, although unreasonable danger to property suffices to impose strict liability for marketing a defective product, the damage must be a consequence of the kind of danger and occur under the kind of circumstances, accidental or not, that made the condition of the product a basis for strict liability. In other words, the defect must threaten personal safety.

"This distinguishes such a loss from economic losses due only to the poor performance or the reduced resale value of a defective, even a dangerously defective, product. It is the distinction between the disappointed users in [those cases seeking a remedy only for 'economic loss' resulting from the defective performance of a product] and the endangered ones * * *." 281 Or at 595.

The court concluded that the conditions for recovery in the case before it were met:

"If the alleged defect in the truck axle housing existed, it was certainly a man-endangering one. The property for which damages are claimed, the truck, was assertedly wrecked in consequence of precisely the defective condition, and under the circumstances, that made the product dangerous to the user. When a defective axle assembly causes a truck to leave the road and turn over, even if by good fortune no person or the property is injured, the damage to the truck itself results

from just the kind of danger for which the responsibility for defective products is imposed on the seller. The trial court did not err in holding that plaintiff had stated a cause of action for strict liability." 281 Or at 595.

■　The defect alleged in the complaint is that the pipe had a high premature failure rate. The damage alleged is that plaintiff will have to replace the pipe, that the failure of the pipe had resulted in a loss of water, that the need to replace the pipe will require extensive street and excavation repairs and that plaintiff will incur the cost of unspecified additional maintenance to the municipal waterworks system. Although plaintiff's complaint alleges the conclusion of a threat to personal safety, it does not state any facts which, if proved, would permit an inference of unreasonable danger to people or property. The allegations make plaintiff out as a disappointed user, not an endangered one. The trial court did not err in dismissing the strict liability claim.

Reversed as to dismissal of negligence claim; otherwise affirmed.